IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TIMOTHY CAREY, MARTHA CHAMBERS, SCOTT LUBER, and MICHAEL REECE,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>WISCONSIN ELECTIONS COMMISSION, and MEAGAN WOLFE, in her official capacity as Administrator of WEC<br><br>*Defendants.* | Civil Case No.: 22-402 |

## COMPLAINT

## INTRODUCTION

1.     Plaintiffs, all of whom are Wisconsin voters with disabilities, seek declaratory and emergent injunctive relief against Defendants' administration of elections in any manner that does not permit disabled voters to receive third-party assistance in returning properly marked absentee ballots.

2.     In general, Wisconsinites may vote in one of two ways: in person on Election Day or by absentee ballot. *See* Wis. Stat. § 6.87(4)(b).

3.     Those who vote absentee may return their properly completed absentee ballot either "in person" to their municipal clerk or by mail. Wis. Stat. § 6.87(4)(b)1.

4.     Yet frequently, voters with disabilities are physically incapable of placing an absentee ballot in the mail or returning it in person to the municipal clerk.

Because of their disability, they require a third party to complete that final task in the voting process on their behalf—either by returning their ballot in person to the municipal clerk or by placing it into the mail. This practice is known as "ballot-return assistance." Without ballot-return assistance, many voters with disabilities, including Plaintiffs, would be unable to access Wisconsin's absentee-voting program, rendering this statutorily provided method of voting unavailable to qualified voters with disabilities, even while it would remain available to other Wisconsin voters.

5.     For decades, Wisconsin Supreme Court precedent authorized Wisconsinites with disabilities to receive ballot-return assistance. *Sommerfeld v. Bd. of Canvassers of City of St. Francis*, 269 Wis. 299, 303, 69 N.W.2d 235 (1955). But on July 8, 2022, the Wisconsin Supreme Court construed Wis. Stat. § 6.87(4)(b)1 to prohibit ballot-return assistance for absentee ballots delivered in person to the municipal clerk. *Teigen v. Wis. Elections Comm'n*, 2021 WI 64. In so doing, the court reversed a 67-year-old precedent and destabilized the law, shortly before a crucial statewide election.

6.     Although the *Teigen* Court expressly declined to address whether Wisconsin law permits ballot-return assistance for absentee ballots returned through the mail, just six days later, on July 14, 2022, Wisconsin's chief election official, WEC Administrator Meagan Wolfe, stated publicly that ballot-return assistance is no

2

longer permissible for any method of absentee voting, declaring at a press conference that "the voter is the one required to mail their ballot."[1]



**WEC administrator: Voters must place own ballots in the mail**

ELECTIONS 3:50 p.m. CT July 14

7.    In combination with *Teigen*, Administrator Wolfe's comments delivered a disturbing message to voters with disabilities: ballot-return assistance is prohibited in ***all*** circumstances throughout Wisconsin.[2]

8.    Yet ballot-return assistance is the only method by which Plaintiffs can vote absentee.

9.    As a result, *Teigen*'s limitation on ballot-return assistance, combined with Wolfe's public comments on how WEC will apply *Teigen* to Wisconsin elections, falls unequally and unlawfully on Wisconsin voters with disabilities, like Plaintiffs. They can no longer fully participate in Wisconsin's absentee-voting system because their only means of doing so is now illegal.

---

[1] https://www.jsonline.com/story/news/politics/elections/2022/07/14/wisconsin-voters-must-place-their-own-ballots-mail/10060842002/

[2] Administrator Wolfe's statements align with Justice Roggensack's concurrence in *Teigen*, which explicitly construes Wis. Stat. § 6.87 to require electors to personally place their own absentee ballot in the mail. *See Teigen*, ¶¶ 88-115 (Roggensack, J., concurring).

10.   Equal access to Wisconsin's absentee-voting program on the same terms as other Wisconsin voters is not the only issue Administrator Wolfe's declaration created for voters with disabilities. Some voters with disabilities, including Plaintiffs, require ballot-return assistance *and* are physically incapable of voting in person on election day.

11.   For these voters, Wisconsin's absentee-voting program is not just a program available to every Wisconsin voter, regardless of their physical ability. Rather, it is their ***only*** means of accessing the franchise. Unless redressed by this Court, the prohibition on ballot-return assistance announced by Administrator Wolfe will eliminate these voters' right to vote altogether.

12.   This is unlawful. Federal law guarantees that voters with disabilities enjoy full and equal access to state voting programs and thus that they are entitled to ballot-return assistance. And when a state makes it impossible for some voters with disabilities to vote at all, it violates the U.S. Constitution.

13.   Following the *Teigen* ruling and Administrator Wolfe's interpretation of that decision, Wisconsin voters with disabilities are in a glaringly unequal position. They are prohibited under *Teigen* from using ballot-return assistance to deliver their ballot in person to the municipal clerk. And, under Administrator Wolfe's comments, municipal clerks may prohibit voters with disabilities from using ballot-return assistance to return absentee ballots by mail.

14.   The next general elections take place on November 8, 2022.

4

15.     With just over three months to go, many Wisconsin voters with disabilities face the imminent threat of discrimination or disenfranchisement, both of which are prohibited under federal law.

16.     This civil action seeks declaratory, injunctive, and other relief to prevent Plaintiffs and other Wisconsin voters with disabilities from being illegally deprived of their right to vote.

17.     Specifically, this lawsuit seeks a declaratory judgment that WEC's construction and intended application of Wisconsin's absentee balloting law to bar Plaintiffs and other Wisconsin voters with disabilities from using ballot-return assistance violates the Voting Rights Act, 52 U.S.C. § 10101, *et seq.*; the Civil Rights Act Amendments of 1982; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; and the First and Fourteenth Amendments to the United States Constitution.

18.     "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964).

19.     Americans who live with disabilities have the same precious right to vote as other Americans. As President Ronald Reagan observed in his remarks on

signing the Voting Rights Acts Amendment into law in 1982: "The right to vote is the crown jewel of American liberties, and we will not see its luster diminished."[3]

## PARTIES

20.     All Plaintiffs in this action are United States citizens, residents of the State of Wisconsin, and are duly qualified and registered as electors in local, state, and federal elections in Wisconsin.

21.     All Plaintiffs reside in their own homes.

22.     Plaintiff Timothy Carey is an adult resident of Appleton, Wisconsin.


Mr. Carey

23.     Mr. Carey has advanced Duchenne Muscular Dystrophy and is unable to move his body. He has a power wheelchair that he can control with his mouth to move around within his home, and he relies on a ventilator and other bulky equipment to keep him alive and well. He also relies on a full-time home health aide to help him navigate his home and do anything he needs to do. As a result of Mr.

---

[3] Remarks on Signing the Voting Rights Act Amendments of 1982 (June 29, 1982) (transcript available at https://www.reaganlibrary.gov/archives/speech/remarks-signing-voting-rights-act-amendments-1982).

Carey's condition, he requires a ventilator at all times. His ventilator is mounted to his powered wheelchair. If the chair or the ventilator experienced a battery malfunction away from his residence, Mr. Carey's life would be in immediate jeopardy. It is impossible for Mr. Carey to leave without the assistance of at least one other person. Leaving his home at any time is thus an extremely risky and cumbersome task, involving mountains of medical equipment.

24.    For these reasons, Mr. Carey cannot go to a polling place to vote on election day.

25.    Mr. Carey cannot move his hands to fill out an absentee ballot, seal it, carry it to the mailbox, or hand it to a clerk or mail carrier.

26.     Mr. Carey has always relied upon an absentee ballot to cast his vote in local, state, and federal elections. Each time he voted, he selected a third party to either place his ballot into the mail or to return it to the municipal clerk.

27.    Mr. Carey needs ballot-return assistance to vote.

28.    Mr. Carey needs ballot-return assistance to participate in Wisconsin's absentee-voting program.

29.    Plaintiff Martha Chambers is an adult resident of Milwaukee, Wisconsin.



Ms. Chambers

30.     Twenty-seven years ago, Ms. Chambers fell from a horse, paralyzing her from the neck down. Ms. Chambers' paralysis prevents her from using her arms or her legs.

31.     Ms. Chambers' paralysis precludes voting in person. Although technically possible, for Ms. Chambers voting in person is an arduous and infeasible challenge.

32.     Ms. Chambers votes through the absentee-ballot procedures provided by Wisconsin law. Still, she cannot do it alone.

33.     As a result of her paralysis, Ms. Chambers cannot open her door to a mail carrier, grasp an absentee ballot to hand it to a mail carrier, place an absentee ballot in a mailbox, or hand her absentee ballot to a municipal clerk. For those final steps she must take to return her absentee ballot, Ms. Chambers needs help from someone else.

34. Whenever Ms. Chambers votes absentee, she must ask a third party to place her absentee ballot into the mail or to return it to the municipal clerk on her behalf.

35. Ms. Chambers needs ballot-return assistance to participate in Wisconsin's absentee-voting program.

36. Plaintiff Scott Luber is an adult resident of Mequon, Wisconsin



Mr. Luber

37. Mr. Luber was born with muscular dystrophy. As a result of his muscular dystrophy, he is unable to control the muscles of his body. So, Mr. Luber depends upon a ventilator as well as a tracheostomy to breathe. He cannot use his arms or legs and has used a power wheelchair to move since he was a freshman in high school.

38. Mr. Luber votes absentee because of his muscular dystrophy.

39. Alone, Mr. Luber could not travel to his polling place.

40. Mr. Luber has attempted to vote in person at his polling location. Yet, the facility located its entry ramp with such proximity to its entry stairwell that Mr.

Luber did not have enough room to safely turn his power wheelchair as he entered or exited the building. So, he risked tipping over and falling down the stairs in his power wheelchair as he entered and exited.

41.    Mr. Luber now votes absentee.

42.    Because of his muscular dystrophy, Mr. Luber cannot mark a ballot by himself, hold a ballot in his hand, open his door to deliver a ballot to a mail carrier, place a ballot in a mailbox, or hand a ballot directly to the municipal clerk.

43.    Mr. Luber requires round-the-clock care from an attendant, and at Mr. Luber's direction, this attendant marks Mr. Luber's ballot and returns it on his behalf.

44.    Mr. Luber needs ballot-return assistance to participate in Wisconsin's absentee voting program.

45.    Plaintiff Mike Reece is an adult resident of Sun Prairie, Wisconsin.



Mr. Reece

46.    Mr. Reece lives with Cerebral Palsy, which limits physical mobility such that he requires 24-hour care. Mr. Reece formerly would travel to his polling location on election day but can no longer do so. In Mr. Reece's experience, his polling location

has failed to maintain and provide the necessary accessible voting equipment for him to vote at his location on election day. Because of these obstacles, Mr. Reece votes absentee. Each time he has done so, his wife returned his ballot to the clerk on his behalf.

47.     Mr. Reece needs ballot-return assistance to participate in Wisconsin's absentee-voting program.

48.     Defendant Wisconsin Elections Commission ("WEC") is an administrative body created under the laws of Wisconsin that administers and enforces Wisconsin elections law, and is made up of six appointed members.

49.     Defendant WEC Administrator Meagan Wolfe is sued in her official capacity. She is the chief election officer of the State of Wisconsin. Wis. Stat. § 5.05(3g). She plays a key role in enforcing state election laws. Wis. Stat. § 5.05(2m)(c).

50.     WEC has "the responsibility for the administration of chs. 5 to 10 and 12 [of the Wisconsin statutes] and other laws relating to elections and election campaigns[.]" Wis. Stat. § 5.05(1).

51.     Defendants WEC and Wolfe are tasked with enforcing Wisconsin's election laws against the public, Plaintiffs included.

## JURISDICTION AND VENUE

52.     This case arises under the Constitution and laws of the United States, and is brought against Defendants through 42 U.S.C. § 1983. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331.

53.     This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1343(a)(3) & (4), 42 U.S.C. §§ 1983 and 1988(a), and 52 U.S.C. § 10308(f) because this action seeks to redress the deprivation, under color of state law, of state rights, privileges, and immunities secured by the First and Fourteenth Amendments to the U.S. Constitution, the Voting Rights Act, 52 U.S.C. § 10301, *et seq.*, the Civil Rights Act of 1963, 52 U.S.C. § 10101, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

54.     This Court has jurisdiction to award attorneys' fees and costs pursuant to U.S.C. § 1988(b) and 28 U.S.C. § 1920.

55.     This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

56.     Venue in this district is proper under 28 U.S.C. § 1391(b)1. because at least one Defendant resides in the Western District of Wisconsin and all Defendants reside in Wisconsin, as well as under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein have occurred—and continue to occur—in the Western District of Wisconsin.

## FACTS

### *Voters with Disabilities*

57.     People with disabilities have long faced significant challenges in exercising their right to vote, even though full and equal access to that right is guaranteed by the Federal Constitution and statutes such as the Voting Rights Act and Americans with Disabilities Act.

12

58. Any person can develop a disability at any time through illness or injury beyond their control. Most people will develop some degree of physical disability as they age.

59. As Congress expressly found in promulgating the Americans with Disabilities Act ("ADA"), "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, overprotective rules and policies … and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(5).

60. The disability community has labored long and hard for recognition, respect, and inclusion at every level of society; full access to their rights; and the best quality of life possible. Access to the ballot is an essential tool in this effort: voters with disabilities have an especially keen interest in who leads our government, even as they face especially daunting barriers to voting for their government representatives.

61. The pervasive discrimination against people with disabilities even manifests at the very foundation of representative democracy: voting. During the November 2020 election, for example, voters with disabilities were twice as likely to experience difficulties during the voting process as compared to all other voters.[4]

---

[4] U.S. Election Assistance Commission, *Disability and Voting Accessibility in the 2020 Elections: Final Report on Survey Results Submitted to the Election Assistance Commission* (Feb. 16, 2021) (available at https://www.eac.gov/sites/default/files/voters/Disability_and_voting_accessibility_in_the_2020_elections_final_report_on_survey_results.pdf).

62.     Under the U.S. Constitution, states must provide their citizens with the right to vote on an equal basis, regardless of those citizens' physical capabilities or disability status.

63.     In line with this guiding principle, the United States—in this century and the last—has repeatedly affirmed its commitment to protecting the franchise of all voters, including voters with disabilities.

64.     In 1965, Congress passed the Voting Rights Act of 1965, which prohibited state and local governments from imposing any rule that could deny or abridge any citizen of the right to vote because of their race or color. Although that statute was a major milestone in advancing the right of people of color to vote in the face of racial discrimination and oppression, it did not address the barriers and discrimination faced by voters with disabilities.

65.     People with disabilities had long demanded recognition of their legal rights, and their efforts gained traction and attention in the wake of the Civil Rights Movement of the mid-20th century. Through peaceful protests and lobbying, disability-rights activists achieved successes, including the Rehabilitation Act of 1973, which prohibited discrimination against people with disabilities in federal and federally funded programs and services.[5]

---

[5] *See, e.g.*, *Disability History: The Disability Rights Movement*, National Park Service, https://www.nps.gov/articles/disabilityhistoryrightsmovement.htm (last accessed May 5, 2022); Norman Hill, *The Intersection of Disability Rights and Voting Rights*, Albert Shanker Institute (Dec. 9, 2021), https://www.shankerinstitute.org/blog/intersection-disability-rights-and-voting-rights.

14

66.     In 1982, when Congress passed the third set of Voting Rights Act Amendments into law, it finally extended the statute's protection to voters with disabilities. Among other expansions of the Voting Rights Act, the 1982 Amendments guaranteed that all voters with disabilities would be free to have a "person of the voter's choice" assist with voting. 52 U.S.C. § 10508.

67.     Less than a decade later, in a crowning achievement for the disability-rights movement, the Americans with Disabilities Act became law. Along with generally prohibiting discrimination against people with disabilities, the ADA and its implementing regulations place affirmative obligations on states and municipalities to ensure that voters with disabilities are able to exercise their right to vote. 42 U.S.C. §§ 12131–12134; 28 C.F.R. §§ 35.101–35.190.

68.     After the Supreme Court issued decisions limiting the protections of the ADA, Congress passed the ADA Amendments Act of 2008 to reverse those decisions and reaffirm, broaden, and strengthen the rights of people with disabilities. 42 U.S.C. § 12101, *et seq.*

69.     Congress continued to expand voting protections for people with disabilities in 2002 when it passed the Help America Vote Act ("HAVA"). HAVA mandates that states' entire "voting system[s] shall … be accessible to individuals with disabilities." 52 U.S.C. § 21081.

70.     In March 2013, President Barack Obama issued an Executive Order creating the Presidential Commission on Election Administration, a bipartisan commission to examine nationwide voting practices. The Commission worked for

months to investigate whether election administration across the U.S. adequately respected the rights of U.S. voters, including voters in the disability community. At the end of its investigation, the Commission issued a comprehensive report examining election-administration successes and failures nationwide and recommending best practices for safe, secure, efficient, and accessible elections.[6]

71. The Commission's final report acknowledged that voters with disabilities continued to face challenges in exercising their right to vote. Disability-rights groups told the Commission that the ADA and HAVA were under-enforced, and that election officials often lacked training to understand and vindicate disability voter rights. Polling places were often difficult for voters with disabilities to access, and voters were not always able to obtain the assistance to which they were legally entitled. The report also noted that increasing numbers of Americans live with disabilities, and that as the baby boomer generation ages, the numbers will only increase.[7]

72. In particular, the Commission's final report acknowledged that the disability rights community had "stressed the importance of training regarding legal requirements, specifically the right to receive assistance from someone of the voter's choosing."[8] This was because so many voters with disabilities needed assistance to

---

[6] Presidential Commission on Election Administration, *The American Voting Experience: Report and Recommendations of the Presidential Commission on Election Administration* (January, 2014) (available at https://www.eac.gov/sites/default/files/eac_assets/1/6/Amer-Voting-Exper-final-draft-01-09-14-508.pdf).

[7] *Id.* at 16–17, 50–51.

[8] *Id.* at 16–17.

16

cast their ballot, and they were not getting the assistance they were entitled to receive.

73.     Today, over 35 million American voters—approximately one-sixth of the United States' total electorate—live with disabilities.[9]

74.     In Wisconsin, people with disabilities comprise a significant proportion of the population.

75.     According to publicly available data, 9.5% of Wisconsinites between the ages of 18 and 64 have a disability, including 4.2% who have an ambulatory difficulty. Nearly a third of Wisconsinites ages 65 and up have a disability, including 18.2% who have an ambulatory difficulty. A person has an ambulatory difficulty if they have "serious difficulty walking or climbing stairs."[10] For someone whose mobility is limited in this way, voting at the polls poses especially serious challenges.

76.     In passing the voting-rights legislation described above, Congress made important strides towards ensuring that Americans with disabilities, including the elderly and our military veterans, could exercise their full rights as United States citizens.

77.     Despite decades of consistent and strong efforts by the U.S. Congress and executive branch to ensure that voters with disabilities can exercise their legally

---

[9] U.S. Elections Assistance Commission, *EAC FACT SHEET: How the U.S. Election Assistance Commission empowers Voters with disabilities and the election officials who serve them* (available at https://www.eac.gov/sites/default/files/eac_assets/1/6/EAC_FACT_SHEET_Voters_with_Disabiltiies11.pdf).

[10] "Population Reporting Disability by Age and Sex and by Type of Disability, 2010-13, P-01623," https://www.dhs.wisconsin.gov/disabilities/physical/demographics.htm (the document has been mislabeled; it contains data from 2015–19).

protected right to vote, barriers to the ballot continue to plague our democracy, both nationwide and, more particularly for the purposes of this complaint, in Wisconsin.

78.   Nationwide and in Wisconsin, even with the increasing protections mandated by federal law for the voting rights of people with disabilities, a substantial disparity remains in the rates at which people with and without disabilities vote. Nationally in 2020, there was a turnout disparity of 5.7 percentage points between people with and without disabilities. The disparity was twice as high in Wisconsin: 75% of eligible voters without disabilities voted in that election, as opposed to 63.6% of voters with disabilities, for an 11.4% gap.[11]

79.   The challenges of in-person voting for people with disabilities highlight the need for absentee voting programs that are accessible to all voters. It should come as no surprise that many Wisconsin voters with disabilities depend on the availability of absentee ballots to cast their vote.[12]

80.   As is the case with Plaintiffs, physical limitations often make leaving the house difficult or impossible for many Wisconsin voters with disabilities.

81.   For many voters who reside in private homes, as opposed to in a congregate setting, the absentee ballot is the only way they can vote. Special voting

---

[11] All statistics in this paragraph taken from Lisa Schur and Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2020 Elections,* Rutgers School of Management and Labor Relations, Dec. 2021 (https://smlr.rutgers.edu/faculty-research-engagement/program-disability-research/voter-turnout-and-voting-accessibility).

[12] *Absentee Voting in Wisconsin—2022 Elections*, Wisconsin Disability Vote Coalition, Feb. 24, 2022 (https://disabilityvote.org/wp-content/uploads/2022/02/DVC-Absentee-Fact-Sheet-rev-2-2022-acc.pdf); *Our Voices, Our Votes*, Disability Rights Wisconsin, April 2022 (https://disabilityrightswi.org/wp-content/uploads/2022/04/DRW-Our-Voices-Our-Votes-4-2022-acc.pdf).

deputies visit some nursing homes and other group-care settings to aid in ballot-return assistance, but they do not serve the majority of such facilities, nor private homes where many individuals with disabilities, including Plaintiffs, live.

82.    Unsurprisingly, voters like Plaintiffs rely on others whom they trust to carry out multiple steps of the absentee-voting process, from requesting and marking the ballot, to the final step: returning absentee ballots on their behalf.

83.    However, as of July 8, 2022, ballot-return assistance is prohibited for absentee ballots returned in person to the municipal clerk. And according to the comments of Administrator Wolfe, the same is true for ballots placed in the mail.

### *Absentee Voting in Wisconsin Before* Teigen

84.    Wisconsin voters need no excuse to vote absentee. Wisconsin offers absentee ballot voting to qualified voters ("electors") who "*for any reason* [are] unable or unwilling to appear at the polling place." Wis. Stat. § 6.85(1) (emphasis added).

85.    The Wisconsin statutes provide several express mechanisms for voters with disabilities to receive assistance in marking or requesting their absentee ballot, including the following:

> a)    A third party may request an absentee ballot on behalf of an elector with a disability. Wis. Stat. § 6.86(1)(ag).
>
> b)    Voters with certain disabilities may elect to have absentee ballots mailed to their residence for every election. Wis. Stat. § 6.86(2).
>
> c)    An elector with a disability may select a third party to mark their absentee ballot. § 6.87(5.)

86.     However, there is no explicit statutory mechanism in Wisconsin law to provide voters with disabilities assistance in *returning* a properly marked absentee ballot.

87.     Nevertheless, for over 65 years, the Supreme Court of Wisconsin recognized that Wisconsin's absentee-balloting laws permitted voters with disabilities to return their ballots through an agent.

88.     In the 1950s, construing the nearly identical predecessor to Wis. Stat. § 6.87(4)(b)1., the Supreme Court of Wisconsin ruled that Wisconsin law allows voters with disabilities to return their ballots through the assistance of a third party. As the Court explained: "Having made provision that these unfortunate people can vote, we cannot believe that the legislature meant to disenfranchise them by providing a condition that they could not possibly perform." *Sommerfeld*, 269 Wis. at 303.

89.     The Court's decision protecting the rights of people with disabilities to vote predated, by decades, federal legislation addressing that same right. Until recently, there was no conflict between Wisconsin law and federal statutes that protect the rights of voters with disabilities.

90.     Under Wisconsin law, as interpreted in *Sommerfeld*, voters with disabilities, including Plaintiffs, were able to return their absentee ballots with assistance from a third party without fear of prosecution for violating Wisconsin law. That changed with the Supreme Court of Wisconsin's recent decision in *Teigen*, and Administrator Wolfe's public statements about how Wisconsin law now prohibits ballot-return assistance even for the mail.

20

*Teigen v. Wisconsin Elections Commission*

91.     Wisconsin Stat. § 6.87(4)(b)1. sets forth the general rule for how voters may return their absentee ballots. It provides that, after an absentee ballot is placed into its envelope, "[t]he envelope shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots."[13]

92.     In March of 2020, as the COVID-19 pandemic spread rapidly throughout Wisconsin, WEC issued a memorandum summarizing existing law and describing how voters could return their absentee ballots while remaining safe from the virus.[14]

93.     Consistent with *Sommerfeld*, the memorandum acknowledged that voters could return their absentee ballot to the clerk by letting a third party return it on their behalf: "A family member or another person may also return the ballot on behalf of the voter."

94.     Two voters challenged the language of this March 2020 memorandum as inconsistent with Wis. Stat. § 6.87(4)(b)1. These voters argued, among other things, that ballot-return assistance is actually a crime under Wis. Stat. § 12.13(3)(n).

95.     A Waukesha County trial-court judge agreed and enjoined all forms of ballot-return assistance last January. Order Granting Summ. J. for Pls., *Teigen et al. v. WEC,* Waukesha Cnty. Case No. 21CV958 (Jan. 19, 2022). The Supreme Court of Wisconsin granted judicial bypass and adjudicated the appeal on an expedited basis.

---

[13] This is the only sentence in Wisconsin's statutes describing how voters who do not reside at a hospital or long-term care facility served by special voting deputies may return their absentee ballots.

[14] This memorandum was issued unanimously, with all three Republican Commissioners and all three Democratic Commissioners voting to approve its issuance.

*Teigen v. WEC*, No. 2022AP0091 (Wis.). While it waited to hear arguments, the Court allowed the trial-court judge's decision to go into effect for the April 2022 election.

96.    The lower-court order[15] at issue was inconsistently implemented by municipal clerks across the state.

97.    For example, when some voters in Brown County, Wisconsin received their absentee ballot, a sticker affixed to the envelope indicated that, without exception, voters could not use an agent to return their ballot:



98.    The City of Racine informed its voters that their ballots could be returned by someone of their choosing[16]:

> **Can I deliver someone else's ballot?**    ⊖
>
> • Yes, a ballot can be returned by someone who is not the voter.

---

[15] Order Granting Summ. J. for Pls., *Teigen et al. v. WEC,* Waukesha Cnty. Case No. 21CV958 (Jan. 19, 2022).

[16] https://www.voteracine.org/vote-absentee/

99. The City of Madison told its voters that this was prohibited and, like Brown County, offered no exceptions[17]:

A recent court decision has a significant impact on how an absentee voter can return their completed absentee ballot. As a result of the decision, the use of absentee ballot drop boxes is prohibited and no one but the absentee voter is able to return their completed ballot.

An absentee voter must return their own completed absentee ballot. The following is a list of options for returning absentee ballots:

- The absentee voter places their completed absentee ballot in the mail to be returned to the City Clerk's Office.
- The absentee voter hand-delivers their completed absentee ballot to an election official at any in-person absentee voting location (starting Tuesday, Mar. 22).

- The absentee voter hand-delivers their completed absentee ballot to personnel in the City Clerk's Office or hand-delivers their completed absentee ballot to the City Clerk.
- The absentee voter hand-delivers their completed absentee ballot to their polling place on Election Day by 8:00pm. Voters can look up their polling place at www.cityofmadison.com/WhereDoIVote.

An absentee voter may not have anyone return their completed ballot for them. This prohibition includes partners, spouses, children, and other family members.

100. On July 8, 2022, the Supreme Court of Wisconsin issued its decision in *Teigen*.

101. The Supreme Court of Wisconsin rendered its longstanding precedent in *Sommerfeld* a "nullity," construing Wisconsin law to prohibit ballot-return assistance for absentee ballots cast at a municipal clerk's office, including at a "drop-box" designated by the clerk. *Teigen* ¶¶ 80, 83.

102. Although the *Teigen* Court declined to rule on the issue, several Justices expressed serious doubt over whether ballot-return assistance was authorized for

---

[17] https://www.cityofmadison.com/news/city-of-madison-absentee-ballots-in-the-mail

absentee ballots cast through the mail. *Teigen*, ¶ 86 (lead opinion), ¶¶ 88–115 (Roggensack, J., concurring).

103. According to the Supreme Court of Wisconsin's ruling: "An absentee ballot must be returned by mail or the voter must personally deliver it to the municipal clerk at the clerk's office or a designated alternative site." *Teigen*, ¶ 4.

104. The Court prohibited voters from using ballot-return assistance to return absentee ballots to the municipal clerk. *Teigen*, ¶ 75 (lead opinion), ¶ 176 (Hagedorn, J. concurring).

105. Although the lead opinion in *Teigen* declined to decide whether ballot-return assistance is permitted for mailed absentee ballots, *see Teigen*, ¶ 5, the decision caused widespread confusion about whether such assistance is allowed under Wisconsin law.

106. On July 14, 2022, WEC Administrator Wolfe—Wisconsin's "chief elections officer," Wis. Stat. § 5.05(3g)—convened a press event in response to the Supreme Court of Wisconsin's *Teigen* opinion.

107. During the event, Administrator Wolfe asserted, to a room full of reporters, that, going forward, all Wisconsin voters must place their own ballots into the mail.[18]

---

[18] Corrine Hess, *Wisconsin voters must mail their own ballots, elections administrator says*, Milwaukee Journal Sentinel (July 14, 2022), available at https://www.jsonline.com/story/news/politics/elections/2022/07/14/wisconsin-voters-must-place-their-own-ballots-mail/10060842002/.

108.    Following the event, her comments were widely reported in media outlets throughout the state.

109.    Under *Teigen* and WEC's application of *Teigen* as detailed by Administrator Wolfe, the only way for Plaintiffs to be certain they are lawfully voting absentee in Wisconsin is by physically returning their absentee ballots without the use of a third party or agent—either personally going to the clerk's office and handing their ballot in or personally placing their ballot in the mail.

110.    This is impossible for Plaintiffs and many other Wisconsinites.

111.    Plaintiffs require ballot-return assistance to vote absentee, or to vote at all.

112.    This prohibition on ballot-return assistance creates "a condition that they could not possibly perform"; exactly the kind of condition the Supreme Court once ruled could not be imposed on voters with disabilities. *Sommerfeld*, 269 Wis. at 303.

113.    Now Plaintiffs are faced with an impossible, and unlawful, choice: abstain from voting altogether or risk that their ballots will be invalidated, or that their only available method to vote absentee (ballot-return assistance) could subject them to prosecution. Using ballot-return assistance, as they must, to vote absentee in November will subject Plaintiffs to disproportionate risks, simply because they are voters with disabilities who would like to exercise their precious right to vote.

**CLAIMS FOR RELIEF**

*FIRST CLAIM FOR RELIEF ON BEHALF OF ALL PLAINTIFFS*
Violation of Section 105 of the Voting Rights Act 52 U.S.C. § 10508;
(Denial of Right to Assistance in Returning Absentee Ballot)

114.   Plaintiffs reallege and reincorporate by reference all preceding paragraphs as though fully set forth herein.

115.   Under the Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution, federal law preempts state law that conflicts or interferes with federal law.

116.   Pursuant to 52 U.S.C. § 10508, voters who require assistance to vote "by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."

117.   Through this guarantee of ballot assistance, Congress has preempted state governments from passing or interpreting laws in a way that conflicts with the right to ballot-return assistance for those who qualify under 52 U.S.C. § 10508.

118.   State law forbidding assistance to qualifying voters is completely at odds with federal law, 52 U.S.C. § 10508, permitting such assistance.

119.   To the extent that, as now declared by the Supreme Court of Wisconsin and interpreted by WEC, Wis. Stat. § 6.87(4)(b)1. prohibits disabled, blind, or illiterate voters from receiving ballot-return assistance, it conflicts with and, under the Supremacy Clause, is preempted by and must yield to 52 U.S.C. § 10508.

26

*SECOND CLAIM FOR RELIEF ON BEHALF OF ALL PLAINTIFFS*
Title II of the Americans with Disabilities Act
42 U.S.C. §§ 12131, *et seq.*
(Discrimination on the Basis of Disability by State and Local Government Entities)

120.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.    Title II of the Americans with Disabilities Act ("ADA") prohibits state and local government entities from denying qualified individuals with disabilities an equal opportunity to benefit from the entity's services, programs, or activities. 42 U.S.C. § 12132. The ADA's protections extend to all aspects of voting, including in-person voting on Election Day, advance voting, and absentee voting.

122.    Plaintiffs are qualified individuals with disabilities within the meaning of the ADA. These individuals have physical impairments that substantially limit one or more of their major life activities, including, but not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

123.    Wis. Stat. § 6.87(4)(b)1.'s prohibition on ballot-return assistance for ballots returned in-person bars qualified disabled voters from participating equally in the State of Wisconsin's absentee-ballot voting system.

124.    Defendant WEC Administrator Wolfe's statement that all Wisconsin voters must place their own ballot into the mail bars qualified voters with disabilities from participating equally in the State of Wisconsin's absentee-ballot-voting system.

125.    These individuals are qualified for the programs, services, and activities being challenged in this Complaint in that they are registered voters otherwise eligible to request and cast a ballot, including an absentee ballot, in Wisconsin elections, and are qualified to participate in Defendants' programs and activities related to voting, and, in particular, absentee voting, the program challenged here. 42 U.S.C. § 12131(2).

126.    Defendant WEC is a public entity as defined by Title II of the ADA, and individual Defendants are the public officials responsible for running these public entities and supervising their operations. 42 U.S.C. § 12131(1).

127.    The ADA's implementing regulations provide that public entities must not "impose or apply eligibility criteria that screen out or tend to screen out" people with disabilities from "fully and equally enjoying" the programs, services or activities of state and local governments." 28 C.F.R. § 35.130(b)(8).

128.    The ADA's implementing regulations also provide that public entities may not provide aids, benefits, or services in such a way that qualified individuals are denied opportunities to participate or benefit, are not afforded "equal opportunity to obtain the same result … as that provided to others," or are "[o]therwise limit[ed] … in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1).

129.    Further, the ADA's implementing regulations prohibit "methods of administration … [t]hat have the purpose or effect of defeating or substantially impairing accomplishment" of the program's objectives. 28 C.F.R. § 35.130(b)(3).

28

130.    Under the ADA, a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

131.    The challenged aspects of Wis. Stat. § 6.87(4)(b)1. discriminate against people with disabilities, including Plaintiffs, in exercising their right to vote.

132.    Wisconsin Stat. § 6.87(4)(b)1., as now declared by the Supreme Court of Wisconsin and interpreted and administered by Defendants WEC and Administrator Wolfe, disenfranchises voters with disabilities who require ballot-return assistance to vote, including Plaintiffs Reece and Carey (who also cannot vote in-person).

133.    Wisconsin Stat. § 6.87(4)(b)1., as now declared by the Supreme Court of Wisconsin and interpreted and administered by Defendants WEC and Administrator Wolfe, prohibits all Plaintiffs from fully participating in Wisconsin's absentee voting program due to their disability status, an illegal and discriminatory effect.

134.    Therefore, Wis. Stat. § 6.87(4)(b)1., as now declared by the Supreme Court of Wisconsin and interpreted and administered by Defendants WEC and Administrator Wolfe, discriminates against Plaintiffs and other qualified Wisconsin voters with disabilities who wish to participate in the electoral process, and violates the ADA by denying them a full and equal opportunity to participate in elections.

*THIRD CLAIM FOR RELIEF ON BEHALF OF ALL PLAINTIFFS*

Section 504 of the Rehabilitation Act

29 U.S.C. § 794

(Discrimination on the Basis of Disability by Recipients of Federal Financial Assistance)

135.    Plaintiffs re-allege and incorporate by reference all prior paragraphs as though fully set forth herein.

136.    Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits discrimination against people with disabilities by any program or activity receiving federal financial assistance. Under Section 504, otherwise qualified individuals with disabilities may not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any such program. 29 U.S.C. § 794(a).

137.    A program or activity includes "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1).

138.    Plaintiffs are qualified individuals with disabilities within the meaning of Section 504. These individuals have impairments that substantially limit one or more of their major life activities, including but not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(A).

139.    These individuals are qualified for the programs and activities being challenged herein in that they are registered voters otherwise eligible to request and

cast a ballot, including an absentee ballot, in Wisconsin elections, and are qualified to participate in Defendants' programs and activities related to voting, and, in particular, absentee voting, the program challenged here. 29 U.S.C. § 794(a).

140.   Defendants receive "Federal financial assistance" within the meaning of 29 U.S.C. § 794(a). WEC relies on federal funding for its basic operations, including elections security.[19]

141.   The operations of Defendants are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(l)(A)–(B).

142.   Section 504 prohibits covered entities from imposing or applying eligibility criteria that screen out or tend to screen out people with disabilities from fully and equally enjoying the benefits of the programs or activities of a covered entity.

143.   Section 504 also prohibits covered entities from providing aids, benefits, or services in such a way that qualified individuals are denied opportunities to participate or benefit, are not afforded equal opportunity to obtain the same result as that provided to others, or are otherwise limited in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

144.   Further, Section 504 prohibits methods of administration that defeat or substantially impair accomplishment of the program's objectives.

---

[19] *State of Wisconsin Elections Commission Agency Budget Request, 2021-2023 Biennium* 44(Sept. 15, 2020).

145.    Finally, under Section 504, a covered entity must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

146.    The challenged aspects of Wis. Stat. § 6.87(4)(b)1. discriminate against people with disabilities, including Plaintiffs, in exercising their right to vote.

147.    Wisconsin Stat. § 6.87(4)(b)1., as now declared by the Supreme Court of Wisconsin and interpreted and administered by Defendants WEC and Administrator Wolfe, disenfranchises voters with disabilities who require ballot-return assistance to vote, including Plaintiffs Reece and Carey (who cannot vote in-person).

148.    Wisconsin Stat. § 6.87(4)(b)1., as now declared by the Supreme Court of Wisconsin and interpreted and administered by Defendants WEC and Administrator Wolfe, prohibits all Plaintiffs from fully participating in Wisconsin's absentee-voting program due to their disability status, an illegal and discriminatory effect.

149.    Therefore, Wis. Stat. § 6.87(4)(b)1., as now declared by the Supreme Court of Wisconsin and interpreted and administered by Defendants WEC and Administrator Wolfe, discriminates against Plaintiffs and other qualified Wisconsin voters with disabilities who wish to participate in the electoral process, and violates the Rehabilitation Act by denying them a full and equal opportunity to participate in the State's elections.

*FOURTH CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS CAREY AND*
*REECE*

First and Fourteenth Amendments

U.S. Const. amend. I, XIV

(Undue Burden on the Right to Vote)

150.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

151.    State election administration practices may not burden a qualified voter's First and Fourteenth Amendment rights to vote unless relevant and legitimate state interests of sufficient weight necessarily justify the magnitude and character of the burdens imposed.

152.    The more a challenged law burdens the right to vote, the more strictly it must be scrutinized. Even slight burdens must be justified by valid state interests of sufficient weight.

153.    The challenged prohibition on ballot-return assistance under *Teigen*, combined with Defendants WEC and Administrator Wolfe's administration of that prohibition, imposes undue burdens on the right of qualified Wisconsin voters with disabilities, including Plaintiffs Carey and Reece, to vote. Those burdens range from significant to severe, and extend to entirely prohibitive.

154.    None of the burdens imposed by the challenged aspects of Wis. Stat. § 6.87(4)(b)1. are necessary to achieve, let alone reasonably related to, any sufficiently weighty legitimate state interest. The burdens imposed by the challenged aspects of

Wis. Stat. § 6.85(4)(b)1. accordingly lack any constitutionally adequate justification and must be enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

I.    Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, declaring that qualifying Wisconsin voters with disabilities are entitled to ballot-return assistance, for both mail and in-person ballot return.

II.   Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, declaring that the application and enforcement of Wis. Stat. § 6.87(4)(b)1 to prohibit qualifying Wisconsin voters with disabilities from using ballot-return assistance to return absentee ballots to their municipal clerk are illegal and unconstitutional as described above, in violation of the Voting Rights Act, the Americans with Disabilities Act, the Rehabilitation Act, as well as the First and Fourteenth Amendments to the United States Constitution;

III.  Grant Plaintiffs temporary and permanent injunctive relief enjoining Defendants from enforcing or giving any effect to Wis. Stat. § 6.87(4)(b)1. so as to prohibit qualifying Wisconsin voters with disabilities from using ballot-return assistance to return absentee ballots to their municipal clerk, including enjoining Defendants from

administering any elections in such a way as to prohibit qualifying Wisconsin voters with disabilities from using ballot-return assistance to return absentee ballots to their municipal clerk ;

IV.   Issue an order requiring Defendants to pay Plaintiffs' costs, expenses, and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by, inter alia, 42 U.S.C. § 1988 and other laws; and

V.    Grant such other relief as this Court finds to be just and equitable.

Dated: July 22, 2022.                     Respectfully submitted

                                          /s/ Scott B. Thompson

Robert J. Gunther Jr. (N.Y. 1967652)*      Scott B. Thompson (Wis. 1098161)
Christopher R. Noyes (Mass. 654324)        Elizabeth M. Pierson (Wis. 1115866)
Omar Khan (N.Y. 4528162)                   Law Forward Inc.
Julia Pilcer Lichtenstein (N.Y.            222 West Washington Avenue, Suite
5337035)                                   250
Sara E. Hershman (N.Y. 5453840)            Madison, WI 53703-0326
Jared V. Grubow (N.Y. 5771845)             414.241.3827
Wilmer Cutler Pickering                     sthompson@lawforward.org
  Hale and Dorr LLP                        epierson@lawforward.org
7 World Trade Center
250 Greenwich Street
New York, NY 10007                         Jeffrey A. Mandell (Wis. 1100406)
(212) 230-8800                             Douglas M. Poland (Wis. 1055189)
Robert.Gunther@wilmerhale.com              Stafford Rosenbaum LLP
Christopher.Noyes@wilmerhale.com           222 West Washington Avenue, Suite
Omar.Khan@wilmerhale.com                   900
Julia.Lichtenstein@wilmerhale.com          Post Office Box 1784
Sara.Hershman@wilmerhale.com               Madison, Wisconsin 53701-1784
Jared.Grubow@wilmerhale.com                608.256.0226
                                           jmandell@staffordlaw.com
Justin R. Metz (Mass. 705658)              dpoland@staffordlaw.com
Wilmer Cutler Pickering
  Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Justin.Metz@wilmerhale.com

* W.D. Wisconsin Admission Pending