IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TIMOTHY CAREY, MARTHA CHAM-
BERS, SCOTT LUBER, MICHAEL
REECE,

          *Plaintiffs,*

          *v.*

WISCONSIN ELECTIONS COMMIS-
SION, MEAGAN WOLFE, in her offi-
cial capacity as Administrator of WEC

          *Defendants.*

No. 3:22-cv-00402

Judge _____

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION AND EMERGENCY DECLARATORY RELIEF**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................... 1

PLAINTIFFS' PROPOSED STATEMENT OF RECORD FACTS .......................... 4

LEGAL STANDARD ................................................................................ 19

ARGUMENT .......................................................................................... 20

I.    Plaintiffs Have Standing To Seek A Preliminary Injunction ......................... 21

II.   Plaintiffs Are Likely To Succeed On The Merits Of Their Claims. ................ 22

      A.    Plaintiffs are likely to succeed on the merits of their VRA claim. ....... 23

          1.    The Mail-In and In-Person Ballot Return Assistance Prohibitions conflict with the Voting Rights Act ..................... 23

          2.    Because the Mail-In and In-Person Ballot Return Assistance Prohibitions Conflict with the VRA, they are preempted. ......... 25

      B.    Plaintiffs Are Likely To Succeed On The Merits Of Their ADA and Rehabilitation Act Claims .................................................................. 26

          1.    Plaintiffs are qualified individuals with disabilities .................. 27

          2.    Defendants are public entities, and the Mail-In and In-Person Ballot Return Assistance Prohibitions deny Plaintiffs the benefit of the service provided. ................................................................. 28

          3.    The Mail-In and In-Person Ballot Return Assistance Prohibitions deny Plaintiffs the ability to vote solely because of their disabilities. ......................................................................... 31

      C.    Plaintiffs Carey and Reece Are Likely To Succeed On The Merits Of Their Claims Under The U.S. Constitution. ......................................... 34

          1.    The *Anderson/Burdick* test applies because the Mail-In and In-Person Ballot Return Assistance Prohibitions revoke Plaintiffs' Carey and Reece's right to vote. ................................................... 35

          2.    The Mail-In and In-Person Ballot Return Assistance Prohibitions fail the *Anderson/Burdick* test. .............................. 37

      D.    The Remaining Factors Weigh Heavily In Plaintiffs' Favor. .............. 42

          1.    Enjoining the Mail-In and In-Person Ballot Return Assistance Prohibitions is necessary to avoid irreparable harm. ................ 42

          2.    Traditional legal remedies will not adequately protect Plaintiffs' rights. ......................................................................................... 43

          3.    The balance of hardships weighs in favor of an injunction. ...... 44

          4.    An injunction is in the public interest. ...................................... 45

i

III.   Enjoining The Mail-In And In-Person Ballot Return Assistance Prohibitions
       Do Not Cause A *Purcell* Problem .................................................................. 47

       A.   Plaintiffs' Requested Relief Does Not Create a *Purcell* Problem. ........ 48

       B.   Even if *Purcell* Applies, The Injunction Should Issue. ........................ 49

CONCLUSION .......................................................................................................... 50

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*United States v. Alabama,*
    691 F.3d 1269 (11th Cir. 2012) ............................................................... 46

*Allen v. State Board of Elections,*
    393 U.S. 544 (1969) ............................................................................... 23

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger,*
    2022 WL 633312 (N.D. Ga. Feb. 28, 2022) ........................................... 23

*Altria Grp., Inc. v. Good,*
    555 U.S. 70 (2008) ................................................................................. 23

*Am. Council of Blind of Ind. v. Ind. Election Comm'n,*
    2022 WL 702257 (S.D. Ind. Mar. 9, 2022) ........................................... 46

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) ............................................................................... 35

*Ark. State Conference NAACP v. Ark. Bd. of Apportionment,*
    2022 WL 496908 (E.D. Ark. Feb. 17, 2022) ......................................... 23

*Ashby v. Warrick Cnty. Sch. Corp,*
    908 F.3d 225 (7th Cir. 2018) ................................................................. 27

*Ass'n of Am. Publishers, Inc. v. Frosh,*
    2022 WL 484926 (D. Md. Feb. 16, 2022) ............................................. 46

*Aux Sable Liquid Prods. v. Murphy,*
    526 F.3d 1028 (7th Cir. 2008) ............................................................... 23

*Bonnette v. D.C. Ct. of Appeals,*
    796 F. Supp. 2d 164 (D.D.C. 2011) ...................................................... 47

*Buquer v. City of Indianapolis,*
    797 F. Supp. 2d 905 (S.D. Ind. 2011) ................................................... 46

*Burdick v. Takushi,*
    504 U.S. 428 (1992) ........................................................................ 35, 36

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ................................................................. 44

*Common Cause Ind. v. Lawson,*
    2020 WL 8167493 (S.D. Ind. Oct. 9, 2020) ...................................................... 48, 49

*Common Cause Ind. v. Lawson,*
    327 F. Supp. 3d 1139 (S.D. Ind. 2018) ............................................................*passim*

*Common Cause Ind. v. Lawson,*
    937 F.3d 944 (7th Cir. 2019) ................................................... 21, 42, 45

*Common Cause v. Thomsen,*
    2021 WL 5833971 (W.D. Wis. Dec. 9, 2021) ....................................... 36

*Crawford v. Marion Cnty. Election Bd.,*
    553 U.S. 181 (2008) ................................................................. 35, 37, 41

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000) ................................................................. 26

*Democracy N.C. v. N.C. State Bd. of Elections,*
    476 F. Supp. 3d 158 (M.D.N.C. 2020) ................................................ 25

*Democratic Exec. Comm. of Fla. v. Lee,*
    915 F.3d 1312 (11th Cir. 2019) ........................................................ 38

*Democratic Nat'l Comm. v. Bostelmann,*
    447 F. Supp. 3d 757 (W.D. Wis. 2020) .............................................. 47

*Democratic Nat'l Comm. v. Bostelmann,*
    451 F. Supp. 3d 952 (W.D. Wis. 2020) ........................................ 37, 44

*Democratic Nat'l Comm. v. Wis. State Legis.,*
    141 S. Ct. 28 (2020) ............................................................... 36, 38

*Disabled in Action v. Bd. of Elections in New York,*
    752 F.3d 189 (2d Cir. 2014) ........................................................ 30

*Disability Rights N.C. v. N.C. Bd. of Elections,*
    2022 WL 2678884 (E.D.N.C. July 11, 2022) ...................................... 24

*Drenth v. Boockvar,*
    2020 WL 2745729 (M.D. Pa. May 27, 2020) ...................................... 30

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................. 43

*Enyart v. Nat'l Conf. of Bar Exam'r, Inc.,*
    630 F.3d 1153 (9th Cir. 2011) ..................................................... 46

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ................................................ 42

*Fisher v. Okla. Health Care Auth.*,
   335 F.3d 1175 (10th Cir. 2003) ........................................... 33

*Frank v. Walker*,
   769 F.3d 494 (7th Cir. 2014) ................................................ 49

*Frederick v. Lawson*,
   481 F. Supp. 3d 774 (S.D. Ind. 2020) ................................. 38

*Harper v. Va. State Bd. of Elections*,
   383 U.S. 663 (1966) ............................................................. 46

*Hindel v. Husted*,
   875 F.3d 344 (6th Cir. 2017) ................................................ 30

*A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*,
   881 F.3d 587 (7th Cir. 2018) ................................................ 32

*Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*,
   582 F.3d 721 (7th Cir. 2009) ................................................ 20

*Hunter v. Hamilton Cty. Bd. of Elections*,
   635 F.3d 219 (6th Cir. 2011) ................................................ 46

*Ill. Republican Party v. Pritzker*,
   973 F.3d 760 (7th Cir. 2020) ........................................ 20, 27

*Washington v. Ind. High Sch. Athletic Ass'n*,
   181 F.3d 840 (7th Cir. 1999) ........................................ 27, 32

*Ind. State Conf. NAACP v. Lawson*,
   326 F. Supp. 3d 646 (S.D. Ind. 2018) ................................. 44

*Jaros v. Ill. Dep't of Corr.*,
   684 F.3d 667 (7th Cir. 2012) ................................................ 27

*Joelner v. Vill. of Washington Park*,
   378 F.3d 613 (7th Cir. 2004) ................................................ 45

*Jones'El v. Berge*,
   164 F. Supp. 2d 1096 (W.D. Wis. 2001) ............................. 43

*La Unión del Pubelo Entero v. Abbott*,
   2022 WL 1651215 (W.D. Tex. May 24, 2022) ..................... 24

*Lacy v. Cook Cnty.*,
   897 F.3d 847 (7th Cir. 2018) .......................................................................... 27, 31

*League of Women Voters of Fla., Inc. v. Lee*,
   2022 WL 969538 (N.D. Fla. Mar. 31, 2022) ......................................................... 23

*League of Women Voters of N.C. v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ................................................................... 38, 42, 44

*Life Spine, Inc. v. Aegis Spine, Inc.*,
   8 F.4th 531 (7th Cir. 2021) ...................................................................................... 20

*Luft v. Evers*,
   963 F.3d 655 (7th Cir. 2020) .................................................................................. 36

*Mays v. Dart*,
   974 F.3d 810 (7th Cir. 2020) .................................................................................. 20

*Merrill v. Milligan*,
   142 S. Ct. 879 (2022) ..................................................................................... 48, 50

*Morse v. Republican Party of Virginia*,
   517 U.S. 186 (1996) ................................................................................................. 23

*Nat'l Fed'n of the Blind, Inc. v. Lamone*,
   813 F.3d 494 (4th Cir. 2016) ............................................................................ 29, 30

*Ne. Ohio Coal. for the Homeless v. Husted*,
   696 F.3d 580 (6th Cir. 2012) .................................................................................. 37

*Ne. Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016) .................................................................................. 39

*Norman v. Reed*,
   502 U.S. 279 (1992) ................................................................................................. 35

*O'Brien v. Town of Caledonia*,
   748 F.2d 403 (7th Cir. 1984) .................................................................................. 45

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ............................................................................ 43, 46

*OCA-Greater Hous. v. Texas*,
   867 F.3d 604 (5th Cir. 2017) .................................................................................. 24

*One Wis. Inst., Inc. v. Thomsen*,
   490 F. Supp. 3d 1338 (W.D. Wis. 2020) ..................................................... 21, 47, 48

*Oneok, Inc. v. Learjet, Inc.*,
   575 U.S. 373 (2015) ........................................................ 26

*People First of Ala. v. Merrill*,
   491 F. Supp. 3d 1076 (N.D. Ala. 2020) .......................... 31, 44

*Planned Parenthood of Wis., Inc. v. Van Hollen*,
   963 F. Supp. 2d 858 (W.D. Wis. 2013) ............................ 20

*Preston v. Thompson*,
   589 F.2d 300 (7th Cir. 1978) ............................................ 43

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ................................................ 21, 38, 46, 47

*Ramsay v. Nat'l Bd. of Med. Exam'r*,
   968 F.3d 251 (3d Cir. 2020) ............................................ 47

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ........................................................ 34

*Robinson v. Ardoin*,
   2022 WL 2012389 (M.D. La. June 6, 2022) ...................... 23

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019) ............................................ 46

*Taliaferro v. N.C. State Bd. of Elections*,
   489 F. Supp. 3d 433 (E.D.N.C. 2020) .......................... 30, 47

*Taylor v. Louisiana.*,
   419 U.S. 522 (1975) ........................................................ 45

*Tribe v. Rodriguez*,
   2020 WL 6203523 (D. Ariz. Oct. 22, 2020) ...................... 36

*Tully v. Okeson*,
   977 F.3d 608 (7th Cir. 2020) .................................. 20, 35, 37

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .......................................... 46

**State Cases**

*Sommerfeld v. Bd. of Canvassers of St. Francis*,
   69 N.W.2d 235 (1955) ................................................*passim*

*Teigen v. Wis. Elections Comm'n*,
    2022 WI 64 (July 8, 2022) ...........................................................................*passim*

*Teigen v. Wis. Elections Comm'n*,
    No. 2022AP91, Order (Wis. Jan. 28, 2022) ........................................................ 12

*Teigen v. Wis. Elections Comm'n*,
    Waukesha Cnty. No. 21CV958 (June 28, 2021) ........................................... 11, 12

**Federal Statutes**

29 U.S.C. § 705 .................................................................................................... 28

29 U.S.C. § 794 .................................................................................. 26, 27, 29, 30

42 U.S.C. § 1983 .................................................................................................. 22

42 U.S.C. § 12101 .................................................................................................. 1

42 U.S.C. § 12102 ........................................................................................... 27, 28

42 U.S.C. §§ 12131–12134 ...........................................................................*passim*

52 U.S.C. § 10508 .........................................................................................*passim*

52 U.S.C. § 21081 .................................................................................................. 7

**State Statutes**

Wis. Stat. § 5.05 ....................................................................................... 10, 22, 29

Wis. Stat. § 6.84 ............................................................................................... 9, 40

Wis. Stat. § 6.85 .................................................................................................... 4

Wis. Stat. § 6.86 ............................................................................................... 5, 33

Wis. Stat. § 6.87 ...........................................................................................*passim*

Wis. Stat. § 11.54 (1955) ...................................................................................... 4

Wis. Stat. § 11.59 (1955) ...................................................................................... 6

Wis. Stat. § 12.09 ................................................................................................ 25

Wis. Stat. § 12.13 .................................................................................. 9, 10, 25, 40

**Regulations**

28 C.F.R. §§ 35.101–35.190 ................................................................. 1

28 C.F.R. § 35.130 ............................................................................. 32

28 C.F.R. § 41.53 .............................................................................. 32

**Other Authorities**

*Absentee Voting Deadlines Quickly Approaching for November 2020*,
WISCONSIN ELECTIONS COMM'N (Oct. 27, 2020), https://elec-
tions.wi.gov/news/absentee-voting-deadlines-quickly-approaching-
november-2020 ................................................................................ 8

*Absentee Voting FAQs*, VOTE RACINE, https://www.voteracine.org/vote-
absentee (last accessed July 26, 2022), [https://web.ar-
chive.org/web/20220405183950/https://www.voteracine.org/vote-ab-
sentee] ............................................................................................ 13

Anthony Izaguirre & Christina A. Cassidy, *No Major Problems With
Ballot Drop Boxes in 2020, AP Finds*, AP (July 17, 2022), https://ap-
news.com/article/voting-rights-2022-midterm-elections-covid-
health-wisconsin-c61fa93a12a1a51d6d9f4e0a21fa3b75?utm_
source=newsletter&utm_medium=email&utm_campaign=newslet-
ter_axiosam&stream=top ............................................................... 9

Corbin Carson, *Election Fraud in America*, NEWS21 (Aug. 12. 2012),
https://votingrights.news21.com/interactive/election-fraud-database ................... 9

Corrinne Hess, *Wisconsin Voters Must Mail Their Own Ballots, Elec-
tion Administrator Says*, Milwaukee J. Sentinel (July 15, 2022, 3:39
PM), https://www.jsonline.com/story/news/politics/elec-
tions/2022/07/14/wisconsin-voters-must-place-their-own-ballots-
mail/10060842002 ......................................................................... 14

*Deadlines for November 8, 2022 General Election*, MYVOTE WIS.,
https://myvote.wi.gov/en-us/Voter-Deadlines ................................. 3

*Early Voting Schedule for the 2022 Partisan Primary*, Milwaukee Elec-
tion Comm'n, https://city.milwaukee.gov/election/Voter-Info/Early-
Voting .............................................................................................. 8

ELECTION ASSISTANCE COMM'N, EAVS Deep Dive: Early, Absentee and Mail Voting (Oct. 17, 2017), https://www.eac.gov/sites/default/files/document_library/files/eavsdeepdive_earlyvoting_101717.pdf....................................................................................... 9

ELECTION ASSISTANCE COMM'N, Federal Financial Report, Wisconsin Elections Commission (Feb. 22, 2022), https://www.eac.gov/sites/default/files/paymentgrants/Election%20Security/FY21%20Annual%20FFR/WI_2021%20ES%20Annual%20Financial%20and%20Progress%20Report.pdf ........................................... 11, 31

Ellen D. Katz et al., *To Participate and Elect: Section 2 of the Voting Rights Act at 40*, UNIV. MICH. L. SCH. VOTING RIGHTS INITIATIVE (2022), https://voting.law.umich.edu (providing data for this estimate) ....................................................................................................... 23

Frederica Freyberg & Marisa Wojcik, *Wisconsin Elections Commission Revokes Drop Box Directive*, PBS WIS. (Feb. 18, 2022), https://pbswisconsin.org/news-item/wisconsin-elections-commission-revokes-drop-box-directive ..................................................................... 12

*Recent Court Ruling Requires Absentee Voters to Return Their Own Absentee Ballot*, CITY OF MADISON (Mar. 15, 2022 12:48 PM), https://www.cityofmadison.com/news/city-of-madison-absentee-ballots-in-the-mail ................................................................... 13

*USPS Recommended Deadline to Place Completed Ballot in the Mail*, WISCONSIN ELECTIONS COMM'N, https://elections.wi.gov/event/usps-recommended-deadline-place-completed-ballot-mail............................... 8

Wendy R. Weiser, *The False Narrative of Vote-by-Mail Fraud*, BRENNAN CTR. FOR JUST. (Apr. 10, 2020), https://www.brennan-center.org/our-work/analysis-opinion/false-narrative-vote-mail-fraud............................................................................................... 9

WIS. ELECTIONS COMM'N, Absentee Ballot Return Options—COVID-19 (March 31, 2020), [https://web.archive.org/web/20200420011212/https://elections.wi.gov/node/6798] ......................................... 11

WIS. ELECTIONS COMM'N, Agency Budget Request 2021-2023 Biennium at 44 (Sept. 15, 2020), https://doa.wi.gov/budget/SBO/2021-23%20510%20ELECTIONS%20Budget%20Request.pdf..................................... 29

WIS. ELECTIONS COMM'N, Clarification on Absentee Ballot Return Comments (July 25, 2022), https://elections.wi.gov/news/clarification-absentee-ballot-return-comments.................................................................. 15

WIS. ELECTIONS COMM'N, Correcting Misinformation About Wisconsin's
Election (Nov. 10, 2020), https://elections.wi.gov/node/7241 ............................... 10

WIS. ELECTIONS COMM'N, Report of Suspected Fraud, Irregularities or
Violations (Oct. 7, 2021) https://elections.wi.gov/sites/elections/files/
2021-10/Report%20of%20Suspected%20Election%20Fraud_
2021.pdf..................................................................................................................... 10

## INTRODUCTION

The "precious right to vote" is a bedrock right of American democracy guaranteed by the United States Constitution and federal statutes. To exercise that right, Wisconsin voters with disabilities frequently vote by absentee ballot, yet they often cannot do so alone. Plaintiffs and scores of other Wisconsinites with disabilities depend on a third party to return their properly completed absentee ballots through the mail or in-person to the municipal clerk (referred to herein as "ballot-return assistance"). To ensure they can safely and successfully access the franchise, Plaintiffs Timothy Carey, Martha Chambers, Scott Luber, and Michael Reece must vote absentee and require ballot-return assistance.

Federal law has long shielded ballot-return assistance for voters with physical disabilities from state interference. Section 2 of the Voting Rights Act (VRA) unambiguously provides voters with disabilities, like Plaintiffs, an expansive right to "be given assistance by a person of the voter's choice" in casting their ballot. 52 U.S.C. § 10508. The Americans with Disabilities Act (ADA) and the Rehabilitation Act prohibit discrimination against persons with disabilities, and place affirmative obligations on states and municipalities to *ensure* that voters with disabilities have equal access to the voting services the state provides to all voters, including absentee balloting. 42 U.S.C. § 12101(a)(3); 42 U.S.C. §§ 12131–12134; 28 C.F.R. §§ 35.101–35.190. And the First and Fourteenth Amendments prohibit states from placing severe burdens on a disabled voter's ability to cast their ballot absent a sufficiently compelling interest in the regulation.

1

Yet in Wisconsin, these federal protections have recently been invaded and jeopardized by the state agency that administers elections, the Wisconsin Elections Commission ("WEC"). For decades under settled law in Wisconsin, Plaintiffs could have a person of their choice assist them with returning their absentee ballot by having that person either (1) place their ballots in the mail; or (2) deliver their ballots to the municipal clerk. During the COVID-19 pandemic, a third option was added—Plaintiffs could receive assistance returning their ballot to a secure drop-box. But on July 8, 2022, the Supreme Court of Wisconsin prohibited ballot-return assistance for absentee ballots returned in-person to the municipal clerk and made the use of secure drop-boxes illegal in Wisconsin. *Teigen v. Wis. Elections Comm'n*, 2022 WI 64, ¶ 83. This ruling left Plaintiffs with only one option to exercise their right to vote: have a person of their choice assist them with placing their ballot in the mail. But six days after the *Teigen* ruling, WEC's Administrator, Defendant Meagan Wolfe, removed this last avenue of access to the franchise for disabled voters: She declared that the Supreme Court's prohibition on ballot-return assistance covered absentee ballots returned through the mail as well.

Plaintiffs and other voters with disabilities are now left in the lurch—they must either break Wisconsin law by using ballot-return assistance to return their absentee ballots through the mail or in-person, or not vote at all. The administration of Wisconsin elections under the dictates of the Supreme Court's ruling in *Teigen* and Defendants' statements prohibits disabled voters from receiving *any* assistance with returning their completed absentee ballot, and thus violates the Voting Rights Act of

2

1965, the Americans with Disabilities Act, the Rehabilitation Act, and the United States Constitution. Defendants' present interpretation of the law eviscerates these bedrock, federal, civil-rights protections.

To protect the right to vote of Plaintiffs and other Wisconsin voters with disabilities, this Court should enjoin Defendants from administering elections in Wisconsin in ways that conflict with federal law. And to that end, the Court should declare that Wisconsinites may have a person of their choice assist with returning their absentee ballots, by mail or in-person, for the upcoming November 2022 general election in Wisconsin. Time is of the essence. The general, mid-term election is on November 8, 2022.[1] Municipal clerks must mail absentee ballots by September 22, 2022.[2]

Plaintiffs plan to vote absentee in the November 8, 2022 general election. Absent an injunction and a declaration from this court that Plaintiffs may have assistance in returning their ballots during that election (either by mail or in-person), they face discrimination and may be disenfranchised from casting their ballots, as will thousands of additional Wisconsinites with disabilities.

Plaintiffs respectfully request expedited briefing and a ruling on this motion by September 15, 2022. Plaintiffs seek an injunction and emergency declaratory relief to prevent Defendants from administering the November 2022 general election in Wisconsin in a way that forbids disabled voters from receiving assistance with the return of their ballot, whether to the office of the municipal clerk or by mail. This

---

1       *Deadlines for November 8, 2022 General Election*, MYVOTE WIS., https://myvote.wi.gov/en-us/Voter-Deadlines (last accessed July 26, 2022).

2       *Id.*

motion is based on the Complaint and the supporting declarations and exhibits submitted with this motion.[3]

## PLAINTIFFS' PROPOSED STATEMENT OF RECORD FACTS

### *Statutory Background*

1.      For nearly 70 years, Wisconsin law permitted voters with disabilities to return absentee ballots with assistance from a third party, whether by assisting with placing the ballot in the mail, dropping it into a drop-box, or delivering it to a local precinct or polling place. *See Sommerfeld v. Bd. of Canvassers of St. Francis*, 69 N.W.2d 235, 237 (1955); Wis. Stat. § 6.87(4)(b)1.

2.      Wisconsin's absentee balloting program was initially limited to military personnel, but Wisconsin expanded it to cover those "who, because of sickness, *physical disability*, or religious reasons" could not appear in-person on election day to cast their ballots. *Sommerfeld,* 69 N.W.2d at 237; Wis. Stat. § 11.54 (1955) (emphasis added).

3.      Today, Wisconsin provides no-excuse absentee balloting, allowing any qualified Wisconsin voter "who for any reason is unable or unwilling to appear at the polling place" to vote by absentee ballot. Wis. Stat. § 6.85(1).

4.      To request or mark an absentee ballot, the existing statutory scheme authorizes voters with disabilities to receive assistance from a third party of their choice. These voters "may authorize an application to be made by another elector on

---

3      The five declarations submitted in support of this motion include: the Declaration of Timothy Carey, the Declaration of Martha Chambers, the Declaration of Michael Reece, the Declaration of Scott Luber, and the Declaration of Scott Thompson.

his or her behalf," Wis. Stat. § 6.86(1)(ag), or be automatically sent an absentee ballot "for every election," *id.* § 6.86(2)(a). Once that ballot is received, they may "select any individual" of their choice, with limited exceptions, "to assist in marking the ballot." *Id.* § 6.87(5).

5.    There is no similar authorization for voters with disabilities to receive third-party assistance to return their properly completed absentee ballots. *See* Wis. Stat. Ch. 6.

6.    Wisconsin provides a general rule that controls how all absentee ballots must be returned: the envelopes containing those ballots "shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots." *Id.* § 6.87(4)(b)(1).

7.    In 1955 the Supreme Court of Wisconsin resolved this inconsistency in *Sommerfeld v. Board of Canvassers of St. Francis*. There, the Court held that Wisconsin absentee voters were entitled to assistance in returning their absentee ballots:

> If our statute is construed to mean that the voter shall himself mail the ballot or personally deliver it to the clerk, then the statute would defeat itself in the case of those who are sick or physically disabled. They would be unable to mail ballots except through an agent. *Having made provision that these unfortunate people can vote, we cannot believe that the legislature meant to disenfranchise them by providing a condition that they could not possibly perform.*

*Sommerfeld*, 69 N.W.2d at 238 (emphasis added).[4]

8.    For seven decades thereafter, Wisconsin's protections for voters with disabilities aligned with, and at times exceeded, federal law. Ten years after *Sommerfeld*, the VRA prohibited state and local governments from imposing any rule that could deny or abridge any citizen's right to vote based on race or color, Pub. L. No. 89-110, § 2, 79 Stat. 437, 437 (1965) ("No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed … on account of race or color."). In 1982, similar protections were extended to voters with disabilities. Pub. L. No. 97-205, § 208, 96 Stat 131, 135 (1982). In the interim, Americans with disabilities found protection in the Rehabilitation Act of 1973 that prohibited any federally funded program or service from discrimination based on disability. Pub. L. No. 93-112, § 504, 87 Stat 355, 394 (1973).

9.    Since its 1982 expansion, the VRA's protections of voters with disabilities have been explicit. Consistent with *Sommerfeld*, voters with disabilities have a federal right to have a "person of the voter's choice" assist with voting . 52 U.S.C. § 10508.

10.    The VRA's legislative history confirms that this language addressed the concern that people requiring assistance "do in fact elect to forfeit their right to vote,"

---

4    The *Sommerfeld* Court interpreted a substantially similar version of Wisconsin's absentee ballot laws that provided that the absentee ballot "envelope shall be mailed by such voter, postage prepaid, to the officer issuing the ballot, or if more convenient it may be delivered in person." Wis. Stat. § 11.59 (1955), *available at* https://docs.legis.wisconsin.gov/1955/statutes/statutes/11.pdf (last accessed July 25, 2022); *cf.* Wis. Stat. § 6.87(4)(b)(1) ("shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots").

when they cannot choose who will assist them. S. Rep. 97-417, at 62 (1982), *as reprinted in* U.S.C.C.A.N. 177, 240–41. Congress sought to ensure that states did not "deny these voters the same opportunity to vote enjoyed by all citizens." *Id.* at 62, 1982 U.S.C.C.A.N. at 241.

11.     Eight years later, Congress passed the ADA, which prohibits discrimination against persons with disabilities, and places affirmative obligations on states and municipalities to ensure that voters with disabilities can exercise their right to vote. Pub. L. No. 101-336, §§ 201–203, 104 Stat. 327, 337 (1990).

12.     The passage of the ADA Amendments Act of 2008 reaffirmed, broadened, and strengthened these protections and emphasized that the definition of a disability should be "construed in favor of broad coverage of individuals" to the maximum extent permitted. Pub. L. No. 110-325, § 3(4)(A), 122 Stat. 3553, 3555 (2008).

13.     In 2002, Congress again ensured that states could not limit disabled voters' access to the ballot box through the Help America Vote Act (HAVA). HAVA requires that a states' entire "voting system[s] shall … be accessible for individuals with disabilities." 52 U.S.C. § 21081.

14.     Historically, Wisconsin law has provided a range of options for absentee ballot return (by mail or in-person return to the clerk) to ensure absentee voters can timely cast their ballots. WEC previously recognized that the ability to return a ballot in-person to the municipal clerk has a unique advantage as election day nears, emphasizing that it "want[s] citizens to choose the option for voting that works best for

them."[5] Unlike mail return, which WEC says can "take up to 7 days" to ensure the "voted ballot [is] received by [the] municipal clerk by mail," in-person return provides voters the opportunity to gather as much information as possible and base their voting decisions on late-breaking news.[6] For example, the City of Milwaukee offers in-person absentee voting through August 6, 2022, the Saturday before the August primary, and will likely offer a similar early voting schedule for the November general.[7] Unlike those voters who return their absentee ballots in-person to the clerk, a voter who places their ballot in the mail on the Saturday before a Tuesday election is unlikely to have that ballot arrive in time to be counted under Wisconsin law. Wis. Stat. § 6.87(4)(b)5.(6) (to be counted, "[t]he ballot shall be returned so it is delivered to the polling place no later than 8 p.m. on election day").

15. Although Wisconsin law provides special voting deputies to collect and deliver ballots for persons residing in residential care facilities and retirement homes, *id.* § 6.875(6)(d), these provisions do not apply to persons with disabilities who reside in their own homes.

---

5    *Absentee Voting Deadlines Quickly Approaching for November 2020*, WISCONSIN ELECTIONS COMM'N (Oct. 27, 2020), https://elections.wi.gov/news/absentee-voting-deadlines-quickly-approaching-november-2020.

6    *USPS Recommended Deadline to Place Completed Ballot in the Mail*, WISCONSIN ELECTIONS COMM'N, https://elections.wi.gov/event/usps-recommended-deadline-place-completed-ballot-mail (last accessed July 26, 2022) (recommending that voters place their absentee ballots in the mail no later than November 1, 2022 for the general election, a whole week before election day).

7    *Early Voting Schedule for the 2022 Partisan Primary*, Milwaukee Election Comm'n, https://city.milwaukee.gov/election/Voter-Info/Early-Voting (last accessed July 15, 2022).

16.     To safeguard the absentee ballot process, Wisconsin has implemented substantial protections to the absentee ballot-return assistance process to support an alleged state interest in election integrity. *See* Wis. Stat. § 6.84(1).

17.     These safeguards include affirmative representations on behalf of the voter affixed to requests for absentee ballots as well as limitations upon who may serve to mark a ballot on behalf of a disabled voter. *Id.* §§ 6.86(1)(ag), 6.87(5),(9).

18.     The legislature enacted these safeguards to ensure that there is no "potential for fraud or abuse, … overzealous solicitation of absent electors … undue influence … or other similar abuses" in using assistance. Wis. Stat. § 6.84.[8]

19.     In 1974, Wisconsin enacted additional safeguards to ensure that the ballots of voters with disabilities, once marked, maintain their integrity.[9] Anyone "called

---

[8]     Voter fraud—and in particular, so-called "ballot harvesting" (referring to the practice where one person gathers completed absentee ballots from multiple voters for submission at by mail or dropbox)—is extremely rare. Despite the clamor of opponents to expansive absentee and vote-by-mail regimes, including in Wisconsin, the myth of widespread absentee voter fraud has been continually debunked. Each year, millions of Americans vote by absentee by mail—yet, between 2000 and 2012, an exhaustive nationwide investigation identified that less than 1/10,000 of 1%, i.e., 0.0001%, of the billions of votes cast were fraudulent. *See* Corbin Carson, *Election Fraud in America*, NEWS21 (Aug. 12. 2012), https://votingrights.news21.com/interactive/election-fraud-database; Wendy R. Weiser, *The False Narrative of Vote-by-Mail Fraud*, BRENNAN CTR. FOR JUST. (Apr. 10, 2020), https://www.brennancenter.org/our-work/analysis-opinion/false-narrative-vote-mail-fraud; *see also* ELECTION ASSISTANCE COMM'N, EAVS Deep Dive: Early, Absentee and Mail Voting (Oct. 17, 2017), https://www.eac.gov/sites/default/files/document_library/files/eavsdeepdive_earlyvoting_101717.pdf. And a 2022 investigation by AP found that "[t]he expanded use of drop boxes for mailed ballots during the 2020 election did not lead to any widespread problems" and Defendants here stated they were "not aware of any cases in 2020 in which drop boxes were damaged, had submitted ballots stolen or destroyed, or were used for fraudulent ballots." Anthony Izaguirre & Christina A. Cassidy, *No Major Problems With Ballot Drop Boxes in 2020, AP Finds*, AP (July 17, 2022), https://apnews.com/article/voting-rights-2022-midterm-elections-covid-health-wisconsin-c61fa93a12a1a51d6d9f4e0a21f a3b75?utm_source=newsletter&utm_medium=email&utm_campaign=newsletter_axiosam&stream= top.

[9]     *See* Act of July 6, 1974, ch. 334, § 12.13, 1973 Wis. Laws Apr. '74 Spec. Sess., *available at* https://docs.legis.wisconsin.gov/1973/related/acts/334 (last accessed July 26, 2022).

upon to assist an elector who … is unable to mark a ballot" is forbidden from "intentionally fail[ing] to cast a vote in accordance with the elector's instructions." Wis. Stat. § 12.13(3)(j). Making false statements for the purposes of "voting an absentee ballot" is also prohibited. *Id.* § 12.13(3)(i). As are forging and knowingly depositing a ballot in the wrong box, *id.* § 12.13(3)(k), and fraudulently "chang[ing] a ballot of an elector so the elector is prevented from voting for whom the elector intended," *id.* § 12.13(3)(m). Each of these violations are crimes in Wisconsin. *Id.* § 12.60(1)(a)-(b) (violations of sections 12.13(j), (k), and (m) are Class I felonies, and 12.13(i) results in an up to $1,000 fine, 6 months imprisonment, or both). These protections ensure the integrity of the ballot when voters with disabilities have another person assist them in returning their absentee ballots. *See Sommerfeld*, 69 N.W.2d at 238.[10]

*Teigen v. WEC*

20.    WEC is a bipartisan regulatory agency of the State of Wisconsin established to administer and enforce election laws. Wis. Stat. § 5.05.

21.    WEC receives federal funding from the United States Election Assistance Commission.[11]

---

10    Following the 2020 election, Defendants reported that there was "no evidence … that supports allegations of systemic or widespread election issues." WIS. ELECTIONS COMM'N, Correcting Misinformation About Wisconsin's Election (Nov. 10, 2020), https://elections.wi.gov/node/7241. Then, in its 2021 report on the previous election period, spanning August 2020 to May 2021, WEC identified only 19 instances of suspected voting irregularities, and none related to assistance with the return of absentee ballots. WIS. ELECTIONS COMM'N, Report of Suspected Fraud, Irregularities or Violations (Oct. 7, 2021) https://elections.wi.gov/sites/elections/files/2021-10/Report%20of%20Suspected%20Election%20Fraud_2021.pdf.

11    ELECTION ASSISTANCE COMM'N, Federal Financial Report, Wisconsin Elections Commission (Feb. 22, 2022), https://www.eac.gov/sites/default/files/paymentgrants/Election%20Security/FY21%20Annual%20FFR/WI_2021%20ES%20Annual%20Financial%20and%20Progress%20Report.pdf.

22.     WEC is located at 201 West Washington Avenue in Madison, Wisconsin, 53703.

23.     Before the 2020 election, during the early onslaught of the COVID-19 pandemic, WEC and its Administrator, Meagan Wolfe, issued a memorandum providing guidance for the upcoming election.[12]

24.     The memorandum instructed voters how lawfully to return their absentee ballot. It explained: "A family member or another person may also return the ballot on behalf of the voter." *Id.*

25.     Nearly sixteen months after the 2020 WEC Memo was issued, two individuals filed suit in Waukesha County to challenge the WEC Memo, arguing that it violated Wisconsin law. *Teigen v. Wis. Elections Comm'n*, Waukesha Cnty. No. 21CV958 (June 28, 2021).

26.     *Teigen* considered Wis. Stat. § 6.87(4)(b)1., the statute governing absentee ballot return. The Circuit Court found that mailing and delivery of absentee ballots must be done personally by the elector voting the ballot, and by no one else. *Teigen v. Wis. Elections Comm'n*, Waukesha Cnty. Case No. 21CV958, Order at 2 (Jan. 20, 2022).

27.     The Circuit Court's oral ruling conflated the "ritual for voting in person" with the "ritual for voting by absentee" and found that absentee voting "requires the elector to be principally involved" but "doesn't require other people to be involved."

---

12     WIS. ELECTIONS COMM'N, Absentee Ballot Return Options—COVID-19 (March 31, 2020), [https://web.archive.org/web/20200420011212/https://elections.wi.gov/node/6798] (last accessed July 26, 2022).

Tr. Mot. Hr'g at 86, *Teigen v. Wis. Elections Comm'n*, Waukesha Cnty. Case No. 21CV958, (Jan. 13, 2022).

28. The Circuit Court did not address the consequences its ruling would have on voters with disabilities, like Plaintiffs. *See generally id.*

29. Shortly after, the Supreme Court of Wisconsin granted judicial bypass and agreed to hear the appeal on an expedited basis. *Teigen v. Wis. Elections Comm'n*, No. 2022AP91, Order at 3, (Wis. Jan. 28, 2022).

30. In the interim, the Supreme Court stayed the Circuit Court's ruling for the February primary elections, but permitted it to go into effect for the local April 2022 elections. *See Teigen v. Wis. Elections Comm'n*, No. 2022AP91, Order at 3, (Wis. Feb. 11, 2022).

31. With the Circuit Court's ruling in place, WEC rescinded the March 2020 guidance memorandum.[13]

32. This abrupt change confused municipal clerks and voters (Plaintiffs included) who encountered inconsistent implementation across the state. For example, in Brown County, absentee ballot voters received a sticker affixed to their envelope stating that their ballot could "ONLY be mailed or returned by the voter, NO ONE else may return your ballot." Declaration of Scott Thompson, Ex. A.

---

[13]      *See* Frederica Freyberg & Marisa Wojcik, *Wisconsin Elections Commission Revokes Drop Box Directive*, PBS WIS. (Feb. 18, 2022), https://pbswisconsin.org/news-item/wisconsin-elections-commission-revokes-drop-box-directive.

33.     The City of Madison in Dane County made a similar representation to its absentee voters, without exception for voters with disabilities: "no one but the absentee voter is able to return their completed ballot."[14]

34.     Meanwhile, voters in Racine County were told that an absentee ballot "can be returned by someone who is not the voter."[15]

35.     On July 8, 2022 the Supreme Court of Wisconsin issued its decision in *Teigen*. The Court decided that absentee voters, even those with disabilities, may not use ballot-return assistance to return their ballots to the clerk, but must instead personally return the ballots themselves. *Teigen v. Wis. Elections Comm'n*, 2022 WI 64, ¶ 83. This restriction is referred throughout as the "In-Person Ballot Return Assistance Prohibition."

36.     According to the Supreme Court of Wisconsin: "An absentee ballot must be returned by mail or the voter must personally deliver it to the municipal clerk at the clerk's office or a designated alternative site." *Teigen*, ¶ 4.

37.     The Court interpreted the statute to prohibit ballot-return assistance from voters who return their absentee ballot in-person to the municipal clerk. *See Teigen*, ¶ 75; *id.* ¶ 176 (Hagedorn, J. concurring).

---

14      *Recent Court Ruling Requires Absentee Voters to Return Their Own Absentee Ballot*, CITY OF MADISON (Mar. 15, 2022 12:48 PM), https://www.cityofmadison.com/news/city-of-madison-absentee-ballots-in-the-mail.

15      *Absentee Voting FAQs*, VOTE RACINE, https://www.voteracine.org/vote-absentee (last accessed July 26, 2022), [https://web.archive.org/web/20220405183950/https://www.voteracine.org/vote-absentee].

38.     Many voters with disabilities, including plaintiffs, are unable to physically return their own absentee ballots to their municipal clerks without ballot-return assistance.

39.     Although the lead opinion in *Teigen* explicitly declined to decide whether voters may have an agent mail their ballots for them, *see Teigen*, ¶ 5, at least one Justice did. Justice Roggensack, writing for herself, went further and concluded that "no one but the elector may mail an absentee ballot." *Teigen*, ¶ 114 (Roggensack, J., concurring). The *Teigen* decision caused widespread confusion about whether such assistance is allowed under Wisconsin law.

40.     On July 14, 2022, Defendant Wolfe declared that WEC was expanding the reach of *Teigen*'s holding to prohibit ballot-return assistance for those absentee ballots sent in to the municipal clerk through the mail. This restriction is referred throughout as the "Mail-In Ballot Return Assistance Prohibition."[16]

---

16      Corrinne Hess, *Wisconsin Voters Must Mail Their Own Ballots, Election Administrator Says*, Milwaukee J. Sentinel (July 15, 2022, 3:39 PM), https://www.jsonline.com/story/news/politics/elections/2022/07/14/wisconsin-voters-must-place-their-own-ballots-mail/10060842002.

14



## WEC administrator: Voters must place own ballots in the mail

ELECTIONS 3:50 p.m. CT July 14

41.    And on July 25, 2022, WEC clarified its view that the prohibition on ballot-return assistance for mail-in votes was "a direct reference to state statutes on this topic" and advised all municipal clerks to "consider[] applicable law in administering the absentee by mail process in their communities."[17]

42.    Wisconsin voters with disabilities are now uncertain how they can vote, if at all.

### *Defendants' Impermissible Discrimination and Disenfranchisement*

43.    Plaintiffs Timothy Carey, Martha Chambers, Scott Luber, and Michael Reece are all registered Wisconsin voters. *See* Declaration of Timothy Carey (Carey Decl.) ¶ 2; Declaration of Martha Chambers (Chambers Decl.) ¶ 2; Declaration of Scott Luber (Luber Decl.) ¶ 2; Declaration of Michael Reece (Reece Decl.) ¶ 2.

---

17    WIS. ELECTIONS COMM'N, Clarification on Absentee Ballot Return Comments (July 25, 2022), https://elections.wi.gov/news/clarification-absentee-ballot-return-comments.

44. During the 2020 election, Plaintiffs Carey, Chambers, Luber, and Reece each voted absentee and returned their ballots by selecting a person of their choice to return the ballot for them. Carey Decl. ¶ 14; Chambers Decl. ¶ 8; Luber Decl., ¶ 13; Reece Decl. ¶ 13.

45. **Timothy Carey.** Mr. Carey lives in Appleton, Wisconsin and has Duchenne muscular dystrophy. Carey Decl. ¶¶ 1, 3.

46. Mr. Carey cannot move any part of his body by himself and is attached to a ventilator to help him breathe 24 hours a day, seven days a week. *Id.* ¶¶ 4-5.

47. Mr. Carey, now 49, has voted in nearly every election since he was 18. *Id.* ¶¶ 1-2, 9.

48. Mr. Carey relies on assistance at every step of the absentee ballot process. *Id.* ¶¶ 10-13.

49. Because Mr. Carey cannot use his arms, he cannot personally mail or deliver his absentee ballot and needs assistance to do so. *Id.* ¶ 13.

50. Traveling to the polls would endanger Mr. Carey's life. *Id.* ¶¶ 6-8.

51. He requires significant life sustaining equipment to be brought with him on the rare occasion he leaves his home; any technical difficulty away from home is life threatening. *Id.* ¶¶ 6-7.

52. The only way that Mr. Carey can vote in Wisconsin is through the state's absentee ballot program . *Id.* ¶¶ 1-17.

53. During the April 2022 local Wisconsin election, uncertain of whether the Waukesha County Court's ruling in *Teigen* applied to him in Outagamie County, Mr.

16

Carey had a person of his choice return his absentee ballot in order to cast his vote. *Id.* ¶ 15.

54.     Mr. Carey intends to vote in Wisconsin's November General elections but cannot do so without ballot-return assistance. *Id.* ¶¶ 16-17.

55.     **Martha Chambers.** Ms. Chambers lives in Milwaukee, Wisconsin and is paralyzed from the neck down. Chambers Decl. ¶¶ 1, 3.

56.     As a result of a horseback-riding accident 27 years ago, Ms. Chambers cannot use her arms and legs without assistance and is constrained to a mechanical wheelchair she can control in a limited fashion. *Id.* ¶ 3.

57.     Ms. Chambers votes in nearly every election. *Id.* ¶ 2.

58.     Because of her lack of mobility and difficulty in accessing in-person polling places, Ms. Chambers has received and voted by absentee ballot in each election since 2014. *Id.* ¶¶ 4-5.

59.     Because of her disability, Ms. Chambers automatically received her absentee ballot for each election. *Id.* ¶ 5.

60.     While Ms. Chambers can fill out her absentee ballot using a pen that she can put in her mouth, she cannot pick up her ballot and place it in her mailbox, or hand it over to the municipal clerk in person. *Id.* ¶¶ 6-7.

61.     During the April 2022 local Wisconsin election, uncertain of whether the Waukesha County Court's ruling in *Teigen* applied to her, Ms. Chambers had a person of her choice return her absentee ballot in order to cast her vote. *Id.* ¶ 9.

17

62.     Ms. Chambers intends to vote absentee in Wisconsin's November General elections but cannot do so without ballot-return assistance. *Id.* ¶¶ 10-11.

63.     **Scott Luber.** Mr. Luber resides in Mequon, Wisconsin. Luber Decl. ¶ 1.

64.     Mr. Luber has muscular dystrophy, and as a result, is unable to control the muscles of his body. *Id.* ¶¶ 4-7.

65.     Alone, Mr. Luber would not be able to get to his polling place. *Id.* ¶¶ 7-9.

66.     Mr. Luber votes absentee in large part because of his muscular dystrophy. *Id.* ¶¶ 8-9.

67.     Historically, Mr. Luber's polling location was treacherous for him because of his disability. The facility located its entry ramp with such proximity to its entry stairwell that he did not have enough room to safely turn as he entered or exited the building. *Id.*

68.     Now, whenever Mr. Luber votes, he votes absentee. *Id.* ¶ 9.

69.     Because of his muscular dystrophy, Mr. Luber cannot mark a ballot, hold a ballot in his hand, open his door to deliver a ballot to a mail carrier, place a ballot in a mailbox, or hand a ballot directly to the municipal clerk. *Id.* ¶¶ 10-13.

70.     Mr. Luber requires constant (24/7) care from an attendant, and this attendant marks Mr. Luber's ballot and returns it on his behalf. *Id.* ¶¶ 7, 10-13.

71.     Mr. Luber intends to vote absentee in Wisconsin's November General elections but cannot do so if he without ballot-return assistance. *Id.* ¶¶ 14-16.

72.   **Michael Reece.** Michael Reece lives in Sun Prairie, Wisconsin and has Cerebral Palsy. Reece Decl. ¶¶ 1, 3.

73.   Mr. Reece, 67, cannot move or use his limbs and requires care 24 hours a day, seven days a week after a 2003 car accident paralyzed him from the chest down. *Id.* ¶¶ 1, 4-5.

74.   Despite these limitations, for years, Mr. Reece attempted to vote in person. *Id.* ¶¶ 5-7.

75.   When Mr. Reece attempted to vote in person, his polling place was unable to provide the assistance he needed to vote. Specifically, it did not have the accessible voting machine he required to cast his vote. *Id.* ¶ 6.

76.   In light of his progressing Cerebral Palsy and the disenfranchisement risk he faces by waiting until election day, the only way that Mr. Reece can vote in Wisconsin is through the state's absentee ballot program. *Id.* ¶¶ 1-12.

77.   So, each time Mr. Reece votes absentee, his wife helps to fill out his ballot and then she returns his ballot to the clerk. *Id.* ¶¶ 8-12.

78.   Mr. Reece intends to vote in Wisconsin's November General but cannot do so if he cannot use assistance to return his ballot. *Id.* ¶¶ 15-16.

## LEGAL STANDARD

To prevail on a preliminary injunction motion, "a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). If this "threshold showing" is successful, the court must "proceed[] to consider the balance of harms between the

parties and the effect of granting or denying a preliminary injunction on the 'public interest.'" *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020), *cert. denied*, 141 S.Ct. 2798 (2021); *see also Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021).

To obtain preliminary relief, a plaintiff must have a "strong" chance of success, but "need not show that it definitely will win the case," or even provide conclusive proof by a preponderance of the evidence. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021). Rather, a party must simply demonstrate how it "proposes to prove the key elements of its case." *Id.* The Court "applies a sliding scale in weighing whether preliminary relief is warranted." *Planned Parenthood of Wis., Inc. v. Van Hollen*, 963 F. Supp. 2d 858, 864 (W.D. Wis. 2013). "[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while supporting some preliminary relief." *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009); *accord Mays*, 974 F.3d at 818 (Preliminary injunction analysis "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa.").

## ARGUMENT

Plaintiffs are entitled to the relief they seek. First, they have standing to seek a preliminary injunction. Second, they satisfy the four requirements necessary to obtain an injunction from this Court: they are likely to succeed on the merits of their claims; they will suffer irreparable harm without injunctive relief; the balance of

harms weighs strongly in their favor; and granting a preliminary injunction will enhance the public interest by ensuring that all qualified Wisconsin electors are provided a meaningful opportunity to exercise their right to vote, whereas denying a preliminary injunction would erode that strong interest. Third, issuing a preliminary injunction against Defendants now will not run afoul of *Purcell v. Gonzalez*, 549 U.S. 1 (2006), which requires federal courts to exercise restraint in altering state election law on the "eve of an election." *One Wis. Inst., Inc. v. Thomsen*, 490 F. Supp. 3d 1338, 1343-44 (W.D. Wis. 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020)). Plaintiffs seek relief substantially in advance of the November 2022 election and, importantly, seek a return to the status quo of Wisconsin election law that was in effect for over 50 years.

## I.  Plaintiffs Have Standing To Seek A Preliminary Injunction.

"To assert standing for injunctive relief, [Plaintiffs] must show that they are under an actual or imminent threat of suffering a concrete and particularized 'injury in fact'; that this injury is fairly traceable to the defendant's conduct; and that it is likely that a favorable judicial decision will prevent or redress the injury." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

Plaintiffs satisfy all three standing requirements. *First*, Plaintiffs' injury is "actual" and "imminent": they have been deprived of their ability to vote absentee in the upcoming November general election without assistance. Carey Decl. ¶ 17; Chambers Decl. ¶ 11; Luber Decl. ¶ 16; Reece Decl. ¶ 16. If Defendants implement the Mail-

In and In-Person Ballot Return Assistance Prohibitions for the November 2022 general election, Plaintiffs will not be able to vote absentee, and therefore, will be prevented from voting at all. There can be no doubt this harm is imminent—the general election is under four months away and absentee ballots will be mailed within 60 days. *Second*, Plaintiffs' injury is traceable to Defendants. WEC and Wolfe as Administrator of WEC are charged with administering the election and enforcing any violations of Wisconsin's election laws. *See* Wis. Stat. § 5.05(1), (2m), (2w), (3d), (3g). Defendants have stated that all Wisconsin voters are prohibited from having a person of their choice place their absentee ballot in the mail and will enforce the In-Person Ballot Return Assistance prohibition and therefore bear the legal responsibility for prohibiting Plaintiffs from receiving the assistance necessary to return their absentee ballots, consequently disenfranchising Plaintiffs. *Finally*, only this Court's issuance of a preliminary injunction will prevent this injury. Only this Court's order declaring that Defendants may not enforce the Mail-In and In-Person Ballot Return Assistance Prohibitions can assure Plaintiffs that they may use assistance to return their ballots (either by mail or in-person) and cast their vote without violating Wisconsin law.

## II.  Plaintiffs Are Likely To Succeed On The Merits Of Their Claims.

Plaintiffs bring their claims under the United States Constitution and 42 U.S.C. § 1983 and three separate substantive federal statutory schemes: the Voting Rights Act of 1965, the Americans with Disabilities Act, and the Rehabilitation Act. Although Plaintiffs need only show that they are likely to succeed on one of these four claims, as demonstrated below, Plaintiffs have a strong likelihood of prevailing on all four claims.

**A.     Plaintiffs are likely to succeed on the merits of their VRA claim.**

The Mail-In and In-Person Ballot Return Assistance Prohibitions violate Section 208 of the VRA, 52 U.S.C. § 10508, which unambiguously provides voters with disabilities the right for a "person of the voter's choice" to assist with voting. Accordingly, the Mail-In and In-Person Ballot Return Assistance Prohibitions are preempted and invalid. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) ("[S]tate laws that conflict with federal law are without effect.") (cleaned up); *see also Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1032-33 (7th Cir. 2008).[18]

**1.     The Mail-In and In-Person Ballot Return Assistance Prohibitions conflict with the Voting Rights Act.**

The Mail-In and In-Person Ballot Return Assistance Prohibitions directly conflict with the VRA. Section 208 of the VRA provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer

---

18     Plaintiffs' private right of action with respect to Section 208 is clear. The Supreme Court's decisions in *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996), and *Allen v. State Board of Elections*, 393 U.S. 544 (1969), and scores of appellate and district court decisions, each make clear that a private right of action exists to enforce Section 2. *See, e.g., Robinson v. Ardoin*, 2022 WL 2012389, at *34 n.239 (M.D. La. June 6, 2022) (collecting cases). To the extent Defendants attempt to rely on *Ark. State Conference NAACP v. Ark. Bd. of Apportionment*, 2022 WL 496908, (E.D. Ark. Feb. 17, 2022) that decision is contrary to binding Supreme Court precent, has already been rejected by other courts, and is not binding on this court. *See Robinson*, 2022 WL 2012389, at *34 (noting and rejecting *Arkansas State Conf. NAACP* in finding a private right of action under section 2); *League of Women Voters of Fla., Inc. v. Lee*, 2022 WL 969538, at *2 (N.D. Fla. Mar. 31, 2022) (same); *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 2022 WL 633312, at *11 n.10 (N.D. Ga. Feb. 28, 2022) (same, noting "the extent and weight of the authority holding otherwise . . . including from the Supreme Court"). Since 1982, private plaintiffs have brought more than 350 cases alleging violations of Section 2 that have resulted in judicial decisions, without any court (until now) holding that Section 2 lacks a private right of action. *See* Ellen D. Katz et al., *To Participate and Elect: Section 2 of the Voting Rights Act at 40*, UNIV. MICH. L. SCH. VOTING RIGHTS INITIATIVE (2022), https://voting.law.umich.edu (providing data for this estimate) (last accessed July 26, 2022).

23

or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. This "assistance to vote" refers to any assistance required to complete "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to," taking any "other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly." *Id.* § 10310(c)(1). And while Congress placed limitations on *who* may give assistance, it did not limit the *type* of assistance permitted. *See La Unión del Pubelo Entero v. Abbott*, 2022 WL 1651215, at *15 (W.D. Tex. May 24, 2022) (Section 208 permits "whatever assistance is necessary to ensure their vote is effective."). As the Fifth Circuit explained, "'[t]o vote,' therefore, plainly contemplates more than the mechanical act of filling out the ballot sheet. It includes steps in the voting process before entering the ballot box, 'registration,' and it includes steps in the voting process after leaving the ballot box, 'having such ballot counted properly.' Indeed, the definition lists 'casting a ballot' as only one example in a non-exhaustive list of actions that qualify as voting." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017).

By preventing Wisconsin voters with disabilities from using assistance to mail or return their ballots to their municipal clerks, the Mail-In and In-Person Ballot Assistance Return Prohibitions conflict with the VRA. "The purpose of Section 208 was to give voters with disabilities unrestricted choice in their right to assistance, thus it cannot have been Congress's intent to permit state voting laws to directly restrict that right. *Disability Rights N.C. v. N.C. Bd. of Elections*, 2022 WL 2678884,

at *5 (E.D.N.C. July 11, 2022). The acts of sealing, post-marking, and mailing or oth-

erwise returning an absentee ballot—actions which Plaintiffs are now forced to un-

dertake without assistance—are "all action[s] necessary to make a vote effective." If

Plaintiffs cannot mail or return their votes (and they cannot), they will not be

counted. *See Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 234

(M.D.N.C. 2020) ("[V]oting using an absentee ballot constitutes 'voting' under the

VRA [and] … includes the delivery of an absentee ballot to a county board of elections

as an action 'necessary to make a vote effective.'"). The Mail-In and In-Person Ballot

Return Assistance Prohibitions thus directly conflict with federal law.[19]

> **2.    Because the Mail-In and In-Person Ballot Return Assis-
> tance Prohibitions Conflict with the VRA, they are
> preempted.**

Because the VRA and the Mail-In and In-Person Ballot Return Assistance Pro-

hibitions are in direct conflict—it is impossible to comply with both—the Mail-In and

In-Person Ballot Return Assistance Prohibitions must cede to the VRA. Recognizing

that citizens with disabilities "run the risk … that their right to vote in state and

federal elections will not be protected," Congress explicitly preempted, through Sec-

tion 208, restrictions on the franchise like the Mail-In and In-Person Ballot Return

---

19      To the extent Defendants may argue the VRA's absentee balloting provisions are aimed at
protecting voters with disabilities from intimidation, that argument is wrong. Congress chose to pro-
tect vulnerable voters from intimidation in two ways. *First*, Section 208 generally permits a voter to
receive "assistance by a person of the voter's choice," 52 U.S.C. § 10508, which the Senate Report
deemed "the only way to assure meaningful voting assistance and to avoid possible intimidation or
manipulation of the voter," S. Rep. No. 97-417, at 62, 1982 U.S.C.C.A.N. at 241. *Second*, Section 208
excludes "the voter's employer or agent of that employer or officer or agent of the voter's union" from
the set of permissible assistors, even if a voter purports to choose such an individual, thereby prevent-
ing systematic economic intimidation. 52 U.S.C. § 10508. Wisconsin law also provides robust protec-
tions against these types of abuses. Wis. Stat. §§ 12.09(2-3), 12.13(3)(k, m-q). Defendants may not
supplement these protections by curbing the core right to necessary assistance.

Assistance Prohibitions. S. Rep. No. 97-417, at 62, 1982 U.S.C.C.A.N. at 240. Congress sought to ensure that "a procedure could not deny the assistance at some stages of the voting process during which assistance was needed[.]" *Id.* at 62-63, 1982 U.S.C.C.A.N. at 241.

Because "compliance with both [the Mail-In and In-Person Ballot Return Assistance Prohibitions] and [Section 208] is impossible," federal law "must prevail." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal quotation marks omitted); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute."). Thus, the VRA preempts the Defendants' interpretation of Wis. Stat. § 6.87(4)(b)1. The Plaintiffs are therefore likely to succeed on the merits of their VRA claim.

### B.   Plaintiffs Are Likely To Succeed On The Merits Of Their ADA and Rehabilitation Act Claims.

Plaintiffs are also entitled to injunctive relief under the ADA and Rehabilitation Act because they are likely to succeed on the merits of those claims. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, Section 504 of the Rehabilitation Act of 1973, prohibits discrimination against people with disabilities by any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

Analysis of claims under both Title II of the ADA and Section 504 are "nearly identical," and are typically assessed together. *Washington v. Ind. High Sch. Athletic*

*Ass'n*, 181 F.3d 840, 845 n.6 (7th Cir. 1999); *Lacy v. Cook Cnty.*, 897 F.3d 847, 852 n.1 (7th Cir. 2018). To be successful, plaintiffs must show: (i) they are qualified individuals with a disability; (ii) they have been denied the benefits of the services, programs, or activities of a public entity, or otherwise subject to discrimination by such an entity; and (iii) that the denial or discrimination was because of (or in the Section 504 context, "solely" because of) their disability. *See, e.g.*, *Ashby v. Warrick Cnty. Sch. Corp*, 908 F.3d 225, 230 (7th Cir. 2018); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). The Plaintiffs satisfy each element here and make the necessary "strong" showing of success on the merits. *See Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir 2020).

### 1.     Plaintiffs are qualified individuals with disabilities.

Plaintiffs Carey, Chambers, Luber, and Reece are qualified individuals with disabilities under the ADA and Rehabilitation Act. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies or practices … or the provision of auxiliary aids and services, meets the essential eligibility requirements for … participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *see also* 29 U.S.C. § 794. Under both the ADA and the Rehabilitation Act, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual," including, in pertinent part, "caring for oneself, performing manual tasks, … walking, standing, lifting, bending," and more. 42 U.S.C. § 12102(1)(A), (2)(A); 29 U.S.C. § 705(20)(B) (adopting ADA definition at 42 U.S.C. § 12102). Plain-

tiffs Carey, Chambers, Luber, and Reece all have disabilities that meet this defini-
tion. Carey Decl. ¶¶ 3-8; Chambers Decl. ¶¶ 3-4; Luber Decl. ¶¶ 4-7; Reece Decl.
¶¶ 3-5.

Because Wisconsin has a no-excuse absentee ballot scheme, each Plaintiff is
eligible to vote by absentee ballot in Wisconsin. Carey Decl. ¶ 9; Chambers Decl. ¶ 5;
Luber Decl. ¶; Reece Decl. ¶ 7. Each has voted absentee with the use of assistance in
Wisconsin in past elections, including the 2020 election. Carey Decl. ¶¶ 9, 14; Cham-
bers Decl. ¶¶ 5, 8; Luber Decl. ¶¶ 9, 13; Reece Decl. ¶¶ 7, 13. Each plan to vote ab-
sentee in the November 2022 Wisconsin general election. Carey Decl. ¶¶ 16-17;
Chambers Decl. ¶¶ 10-11; Luber Decl. ¶¶ 14-16; Reece Decl. ¶¶ 15-16. As qualified
voters, Defendants cannot restrict Plaintiffs' access to Wisconsin's absentee ballot
program. 42 U.S.C. § 12131(2); *see also* 29 U.S.C. § 794.

> **2. Defendants are public entities, and the Mail-In and In-
> Person Ballot Return Assistance Prohibitions deny Plain-
> tiffs the benefit of the service provided.**

Plaintiffs are likely to succeed on the merits of the second element of their ADA
claim because (a) Defendants are public entities, receiving federal funding, and
(b) they provide unequal access to the absentee ballot program.

> **a. Defendants are public entities.**

The second element of Plaintiffs' ADA and Rehabilitation Act claims is satis-
fied because Defendants are covered entities under both statutory schemes. Under
Title II of the ADA, a covered entity is any "public entity," *i.e.*, "(A) any State or local
government; [or] (B) any department, agency, special purpose district, or other in-

strumentality of a State or States or local government." 42 U.S.C. § 12131(1). Like-
wise, under Section 504 of the Rehabilitation Act a covered entity is any entity, pro-
gram, or activity that receives federal financial assistance. 29 U.S.C. § 794(a).

Defendants are covered entities under both the ADA and Section 504. WEC is
created under the laws of the State of Wisconsin and has "the responsibility for the
administration of … laws relating to elections and election campaigns," as well as
their enforcement. Wis. Stat. § 5.05(1), (2m), (2w). Defendant Wolfe is WEC Admin-
istrator, a position created under the laws of the State of Wisconsin, and serves in
that capacity as "the chief election officer" of Wisconsin tasked with performing "such
duties as the commission assigns" to her. *Id.* § 5.05(3d), (3g); *see also Nat'l Fed'n of
the Blind, Inc. v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016) (finding no dispute that
elections agencies and related individuals, sued in their official capacities, were "pub-
lic entities" under the ADA). WEC and its Administrator receive federal funds from
the Election Assistance Commission, making them subject to the Rehabilitation
Act.[20]

---

20    ELECTION ASSISTANCE COMM'N, Federal Financial Report, Wisconsin Elections Commission
(Feb. 22, 2022), https://www.eac.gov/sites/default/files/paymentgrants/Election%20Security/
FY21%20Annual%20FFR/WI_2021%20ES%20Annual%20Financial%20and%20Progress%20Re-
port.pdf (indicating WEC received over $14 million in funds to "improve the administration and secu-
rity of Federal elections); *see also* WIS. ELECTIONS COMM'N, Agency Budget Request 2021-2023 Bien-
nium at 44 (Sept. 15, 2020), https://doa.wi.gov/budget/SBO/2021-23%20510%20ELECTIONS%20
Budget%20Request.pdf.

**b.**    **The Mail-In and In-Person Ballot Return Assistance Prohibitions deny Plaintiffs the benefits of an established service.**

To comply with the ADA, Defendants must provide Plaintiffs with access to the absentee ballot program *equal to* that of voters without disabilities. Here, the service at issue is the provision of the absentee ballot program, which is a "program, service, or activity" distinct from both in-person voting and the voting program as a whole. *Lamone*, 813 F.3d at 504 ("[I]t is far more natural to view absentee voting—rather than the entire voting program—as the appropriate object of scrutiny for compliance with the ADA and Rehabilitation Act"); *see also Disabled in Action v. Bd. of Elections in New York,* 752 F.3d 189, 199 (2d Cir. 2014) (same); *Hindel v. Husted*, 875 F.3d 344, (6th Cir. 2017) (assuming without deciding that absentee voting was the program, service, or activity to be analyzed); *Drenth v. Boockvar*, 2020 WL 2745729, at *5 (M.D. Pa. May 27, 2020) (same); *Taliaferro v. N.C. State Bd. of Elections*, 489 F. Supp. 3d 433, 437-38 (E.D.N.C. 2020) (same). Thus, the relevant service is the absentee balloting program—rather than the voting program in its entirety.

The availability of in-person voting (which itself can be inaccessible, *see* Luber Decl. ¶¶ 8-9; Reece Decl. ¶¶ 6-7) is not a substitute and does not change Defendant's obligations regarding absentee balloting. *See Disabled in Action,* 752 F.3d at 199 (explaining that "the relevant benefit is the opportunity to fully participate in [the state's] voting program" because "to assume the benefit is anything less—such as merely the opportunity to vote at some time and in some way—would render meaningless the mandate that public entities may not afford persons with disabilities services that are not equal to that afforded others" (cleaned up)); *People First of Ala. v.*

30

*Merrill*, 491 F. Supp. 3d 1076, 1158 (N.D. Ala. 2020) ("[B]ased on the ADA's broad remedial purpose, if a state provides voters with a choice between in-person and absentee voting, then the ADA mandates that both options be accessible to voters with disabilities."). Even if Plaintiffs *could* vote in-person, that is irrelevant for these claims. Plaintiffs are entitled to vote absentee in the same manner as nondisabled voters, which includes the opportunity to mail-in their ballots or return their ballots to the clerk directly, the latter having unique advantages for ensuring an absentee ballot is timely returned as election day draws near. By creating a prerequisite to mail-in and in-person absentee ballot return that Plaintiffs cannot satisfy *because* of their disability, Wisconsin law denies these qualified voters full and equal access to Wisconsin's no-excuse absentee ballot program.

### 3. The Mail-In and In-Person Ballot Return Assistance Prohibitions deny Plaintiffs the ability to vote solely because of their disabilities.

Plaintiffs also satisfy the third element of their ADA and Rehabilitation Act claims because Defendants' prohibition on the use of assistance to mail or return in-person an absentee ballot discriminates against Plaintiffs *solely* because of their disabilities. Indeed, Plaintiffs Carey and Reece are denied much more than mere "meaningful access" to participation in Wisconsin's absentee ballot program. If they cannot have ballot-return assistance, they are denied the ability to exercise the franchise at all. *Cf. Lacy*, 897 F.3d at 854 (noting it is sufficient that plaintiffs be denied "meaningful[] access[]" to the public benefit).

Under the ADA and Rehabilitation Act, Defendants may not "[d]eny a qualified individual with a disability"—which Plaintiffs are—"the opportunity to participate in

or benefit from the aid, benefit, or service," or "[o]therwise limit a qualified individual … in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. §§ 35.130(b)(1)(i), (vii).[21] To ensure that Plaintiffs receive the benefit of the absentee ballot service, Defendants are required, under the ADA and Rehabilitation Act, to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless doing so would fundamentally alter the service. 28 C.F.R. §§ 35.130(b)(7)(i); *see also Washington*, 181 F.3d at 847; 28 C.F.R. § 41.53 (imposing duty to ensure persons with disabilities have equal access to public programs); *see A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018).

Here, as explained above, the service that Plaintiffs are being denied is the ability to participate in absentee balloting. And while any registered Wisconsin voter can opt to vote absentee without excuse, Plaintiffs vote absentee out of necessity. Able-bodied persons have the ability to personally mail or return their absentee ballot. Many Wisconsinites with disabilities, like Plaintiffs, do not. Denying Plaintiffs the choice of a person to assist in mailing or returning their ballots in-person to the clerk thus violates the ADA and Section 504 because without that assistance they cannot fully participate in the absentee balloting program.

---

[21]    Defendants also may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[,]" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" 28 C.F.R. §§ 35.130(b)(1)(ii)-(iii).

Before the Supreme Court ruled in *Teigen* and Defendants declared they would enforce the Mail-In and In-Person Ballot Return Assistance Prohibitions, Plaintiffs could and did cast absentee ballots in Wisconsin by using a person of their choice to assist them in returning their marked absentee ballots. Carey Decl. ¶¶ 9-14; Chambers Decl. ¶¶ 5-9; Luber Decl. ¶¶ 9-15; Reece Decl. ¶¶ 7-14. Plaintiffs seek only to choose someone to help them complete the act of absentee voting by returning their ballot (by mail or in-person to the clerk) on their behalf. Wisconsin can certainly provide them with this accommodation—it already did for over 65 years. *See Sommerfeld*, 69 N.W.2d at 238. Because Wisconsin provided this option to voters with disabilities for more than half a century, doing so again could not fundamentally alter the nature of the program or service. *See Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1183 (10th Cir. 2003) (rejecting district court's fundamental-alteration analysis because it was not "clear why the preservation of a program as it has existed for years … would 'fundamentally alter the nature' of the program."). Indeed, it would be absurd to conclude that ballot-return assistance could fundamentally alter an absentee balloting regime that allows persons with disabilities to choose a person to assist them in all other aspects of the absentee ballot process. Wis. Stat. § 6.86(1)(ag) (assistance in requesting an absentee ballot); *Id.* § 6.87(5) (assistance in marking an absentee ballot).

Because of their disabilities, Plaintiffs physically cannot comply with the Mail-In and In-Person Ballot Return Assistance Prohibitions, and because Plaintiffs do not

33

have access to Wisconsin's absentee balloting program on the same basis as non-disabled voters, Plaintiffs will succeed on the merits of their ADA and Rehabilitation Act claims. The Court must enjoin Defendants from enforcing the Mail-In Ballot Return Assistance Prohibition and the In-Person Ballot Return Assistance Prohibition against Plaintiffs and qualified voters with disabilities in Wisconsin. It must declare that qualified voters with disabilities such as Plaintiffs may have a person of their choice assist in returning their ballot, either by mail and in-person to the municipal clerk, for the November 2022 Wisconsin general election.

### C. Plaintiffs Carey and Reece Are Likely To Succeed On The Merits Of Their Claims Under The U.S. Constitution.

For Mr. Carey, Mr. Reece, and many other voters, this case is not about making it easier to vote; this case is about making it *possible* for them to vote. The right to vote, as embodied in the First and Fourteenth Amendments, is fundamental, and any alleged infringement on that right "must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964). A blanket ban on *any* ballot return assistance makes it impossible for voters with severe physical disabilities, like Plaintiffs Carey and Reece, to exercise their fundamental right to vote, and thus violates the U.S. Constitution. Plaintiffs Carey and Reece are likely to succeed for two reasons: (1) under *Anderson/Burdick*, heightened scrutiny applies to the Mail-In and In-Person Ballot Return Assistance Prohibitions as applied to them; and (2) the Mail-In and In-Person Ballot Return Assistance Prohibitions fail under *Anderson/Burdick* because, together, they are an absolute bar to Plaintiffs' Carey and Reece's right to vote, and Wisconsin has no precise interest in its application.

34

1.   **The *Anderson/Burdick* test applies because the Mail-In and In-Person Ballot Return Assistance Prohibitions revoke Plaintiffs' Carey and Reece's right to vote.**

Election laws that restrict the franchise are subject to the framework set forth by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under *Anderson/Burdick*, courts must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). This inquiry is highly fact-specific and may not be undertaken mechanically. Rather, courts apply a "flexible standard." *Id*. When voting rights are severely restricted, a law "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992).

This Court must evaluate the Mail-In and In-Person Ballot Return Assistance Prohibitions under *Anderson/Burdick* and apply strict scrutiny because they do not merely "affect the right to vote"—they threaten to eliminate that right for Plaintiffs Carey and Reece.[22] *Tully v. Okeson*, 977 F.3d 608, 616 (7th Cir. 2020); *cf. Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 204 (2008) (Scalia, J., concurring) ("To eval-

---

22      In the Seventh Circuit, the *Anderson/Burdick* test does not apply to all restrictions on the right to vote. It does, however, apply when a voter's "ability to cast a ballot" is eliminated, which the Mail-In and In-Person Ballot Return Assistance Prohibitions would do here. *Tully*, 977 F.3d at 613.

uate a law respecting the right to vote—whether it governs voter qualifications, candidate selection, or the voting process—we use the approach set out in *Burdick v. Takushi*.”).

The Mail-In and In-Person Ballot Return Assistance Prohibitions are not “one less-convenient feature” of an otherwise acceptable system. *Luft v. Evers*, 963 F.3d 655, 675 (7th Cir. 2020). With respect to Plaintiffs Carey and Reece, this is not a case where they could simply use another form of identification, *Common Cause v. Thomsen*, 2021 WL 5833971, at *6 (W.D. Wis. Dec. 9, 2021); meet “a reasonable election deadline”, *Democratic Nat’l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 35 (2020) (Gorsuch, J. concurring); or arrange to get to the polls earlier, *Tribe v. Rodriguez*, 2020 WL 6203523, at *1 (D. Ariz. Oct. 22, 2020). Plaintiffs Carey and Reece cannot overcome the Mail-In Ballot Return Assistance Prohibition’s bar on assistance in mailing their vote, because together with Defendants’ enforcement of the In-Person Ballot Return Assistance Prohibition, Defendants have eliminated all options for Plaintiffs Carey and Reece to return (and thus vote) their absentee ballots.

Mr. Carey and Mr. Reece do not seek relief here to make it easier to vote but to make it *possible* to vote. Ballot-return assistance to submit an absentee ballot is the *only* way Mr. Carey can cast his vote. Mr. Carey has advanced Duchenne Muscular Dystrophy and is unable to move his body. Carey Decl. ¶¶ 3-4. He physically cannot travel alone to a polling station to cast his vote, and even traveling with a caregiver puts his life at risk. *Id.* ¶¶ 4-8. Nor can he cast an absentee vote without assistance. *Id.* ¶¶ 9-13. Without use of his hands, he cannot fill out a ballot, seal it, carry

it to the mailbox, place it in the mailbox, or hand it to a clerk or mail carrier. *Id.*; *see also* Reece Decl. ¶ 7-12. If the Mail-In and In-Person Ballot Return Assistance Prohibitions stand, Mr. Carey and Mr. Reece cannot exercise their fundamental right to vote at all. In this regard, the Mail-In and In-Person Ballot Return Assistance Prohibitions do not "curtail" the right to vote—they abolish that right all together and are thus subject to heightened scrutiny under *Anderson/Burdick*. *Tully*, 977 F.3d at 616 (noting that "election laws that do not curtail the right to vote need only pass rational-basis scrutiny"); *cf. Crawford*, 553 U.S. at 204 (Scalia, J., concurring) ("[R]eserving strict scrutiny for laws that severely restrict the right to vote."); *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012) ("[S]trict scrutiny applies when a state's restriction imposes 'severe' burdens.").

### 2. The Mail-In and In-Person Ballot Return Assistance Prohibitions fail the *Anderson/Burdick* test.

The Mail-In and In-Person Ballot Return Assistance Prohibitions fail to pass muster under the second element of the *Anderson/Burdick* test because (a) the Mail-In and In-Person Ballot Return Assistance Prohibitions are a complete bar to Plaintiffs Carey and Reece's right to vote, (b) Wisconsin has no precise interest in prohibiting such assistance to persons with disabilities, and (c) the whole of Wisconsin's scheme proves the strength of Plaintiffs' case.

### a. The Mail-In and In-Person Ballot Return Assistance Prohibitions function as an absolute bar to Plaintiffs Carey and Reece's right to vote.

Here, the "extent of the burden imposed by the challenged provision" is extreme because for Mr. Carey and Mr. Reece, and other disabled Wisconsin voters, the

right to vote has been effectively eliminated. *Democratic Nat'l Comm.*, 451 F. Supp. 3d at 970; *see also Crawford*, 553 U.S. at 205 (Scalia, J., concurring) (the burdens on the right to vote "are severe if they go beyond the merely inconvenient").

Even disenfranchising a small number of voters is a severe burden that can subject a law to strict scrutiny. *Cf. Purcell*, 549 U.S. at 4 ("[T]he possibility that qualified voters might be turned away from the polls would caution any district judge to give careful consideration to the plaintiffs' challenges."); *Democratic Nat'l Comm.*, 141 S. Ct. at 41 (Kagan, J., dissenting from denial of application for stay) ("[D]isenfranchisement of [tens of thousands of Wisconsinites] imposes a severe burden on the right to vote."). Here, Mr. Carey and Mr. Reece are unable to vote because of the Mail-In and In-Person Ballot Return Assistance Prohibitions. For severely disabled voters, the burden on their right is the most substantial. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) (it is a "basic truth that even one disenfranchised voter—let alone several thousand—is too many"); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1321 (11th Cir. 2019) (same); *Frederick v. Lawson,* 481 F. Supp. 3d 774, 798 (S.D. Ind. 2020) ("[A]lthough only a narrow class of voters are affected, the magnitude of the burden on those voters is substantial.").

      **b.**    **Wisconsin cannot articulate any "precise interest" that can justify the burdens the Mail-In and In-Person Ballot Return Assistance Prohibitions inflict on Plaintiffs Carey and Reece and other Wisconsinites with severe physical disabilities.**

The Wisconsin Legislature and WEC have an interest in preventing fraud and ensuring electoral integrity, but these interests do not justify the extreme burden

imposed by WEC's enforcement of the Mail-In and In-Person Ballot Return Assistance Prohibitions. The state's interests are covered by numerous existing statutory safeguards, including criminal penalties for fraud.[23] *See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) (finding that in light of all other safeguards a generalized interest in combating voter fraud did not justify severe burden on franchise). For example, when requesting an absentee ballot with assistance, "the application shall state that it is made on request and by authorization of a named elector who is unable to sign the application due to physical disability." Wis. Stat. § 6.86(1)(ag). When marking a ballot with assistance, the elector may not select an individual who is "the elector's employer or an agent of that employer or an officer or agent of a labor organization which represents the elector," and the assistant must "sign his or her name to a certification on the back of the ballot." *Id.* § 6.87(5). If the affidavit affirming the integrity of the vote of the absentee ballot is found to be insufficient, it will not be counted. *Id.* § 6.87(9). The legislature enacted these safeguards to ensure that there is no "potential for fraud or abuse, … overzealous solicitation of

---

23    The state will reject an absentee ballot if it suffers from any of the following deficiencies: no voter signature, Wis. Stat. § 6.87(2), (9); no witness signature, § 6.87(2); no witness address, § 6.87(6d); no proof of identification, unless exempt, § 6.87(1); an opened, soiled, or resealed envelope, § 6.88(3)(b); if voting from a residential home pursuant to § 6.875, both special voting deputies failed to sign, § 6.875(6)(c)(1); or an absentee ballot that uses a witness who is also a candidate in the election, § 6.87 (7). Additionally, each polling place must maintain Absentee Ballot Logs in order to ensure that an absentee voter does not vote twice, § 6.88(3)(a); Election Day Manual at 39-41. Absentee voters also must show photo ID or an acceptable substitute. Voters who are "indefinitely confined" due to disability may substitute the photo ID requirement with a witness section (Voters with Disabilities); §§ 6.86(2)(a), 6.87(4)(b)2.

absent electors … undue influence … or other similar abuses" in using assistance. Wis. Stat. § 6.84.[24]

Wisconsin has enacted additional safeguards to ensure that the ballots of voters with disabilities, once marked, maintain their integrity. Wisconsin law prohibits anyone "called upon to assist an elector who … is unable to mark a ballot" from "intentionally fail[ing] to cast a vote in accordance with the elector's instructions." Wis. Stat. § 12.13(3)(j). Making false statements for the purposes of "voting an absentee ballot" is also prohibited. *Id.* § 12.13(3)(i). As are forging and knowingly depositing a ballot in the wrong box, *id.* § 12.13(3)(k), and fraudulently "chang[ing] a ballot of an elector so the elector is prevented from voting for whom the elector intended," *id.* § 12.13(3)(m). These violations are crimes in Wisconsin. *Id.* § 12.60(1)(a)-(b) (violations of sections 12.13(j), (k), and (m) are Class I felonies, and 12.13(i) results in an up to $1,000 fine, 6 months imprisonment, or both). These protections secure the integrity of the ballot when disabled parties have a person of their choosing assist them returning their absentee ballots. *See Sommerfeld*, 69 N.W.2d at 238. And Wisconsin's previously existing protections have essentially eliminated absentee balloting fraud.[25] *See supra* ¶¶ 18 n.8, 19 n.10. The non-existent benefit of the Mail-In and In-Person Ballot Return Assistance Prohibitions is far outweighed by the burden it places on Plaintiffs Carey and Reece.

---

24      *See supra*, n.6.

25      *See supra*, n. 6, 7.

### c. Considering Wisconsin's electoral scheme "as a whole" demonstrates the strength of Plaintiffs' merits case.

Wisconsin law provides a litany of protections ensuring that disabled people can vote. *See, e.g.*, Wis. Stat. §§ 6.86(2); 6.87(5); *supra* ¶¶ 3-10, 16-19. Before *Teigen* and the Defendants' pronouncement of the Mail-Ballot Return Assistance Prohibition, the Wisconsin Supreme Court interpreted these protections to allow voters with disabilities to return their ballots through a third party as congruent with the legislature's design of the electoral system as protective of those with disabilities. *See Sommerfeld*, 69 N.W.2d at 238. As the Court explained, "[h]aving made provision that these unfortunate people can vote, we cannot believe that the legislature meant to disenfranchise them by providing a condition that they could not possibly perform." *Id.* Viewed in light of a system that explicitly protects Wisconsinites' rights to vote regardless of disability, the Mail-In and In-Person Ballot Return Assistance Prohibitions are a glaring departure that cannot stand.

In sum, the Mail-In and In-Person Ballot Return Assistance Prohibitions gut Mr. Carey's and Mr. Reece's—and others like them—constitutionally guaranteed right to vote. Defendants have failed to justify this disenfranchisement with a "sufficiently weighty" corresponding state interest. *Crawford* 553 U.S. at 190. The Mail-In and In-Person Ballot Return Assistance Prohibitions fail under the *Anderson-Burdick* framework, and thus Plaintiffs are likely to succeed on the merits of their constitutional claim.

### D.     The Remaining Factors Weigh Heavily In Plaintiffs' Favor.

Plaintiffs satisfy the remaining factors required to establish entitlement to a preliminary injunction because: (1) they will be irreparably harmed if the Mail-In and In-Person Ballot Return Assistance Prohibitions remain in place; (2) the traditional legal remedies do not adequately protect their right to vote; (3) the State suffers no hardship in allowing Plaintiffs to have a person of their choice mail or personally deliver their absentee ballot; and (4) there is substantial public interest in granting Plaintiffs' motion and ensuring that Plaintiffs and other persons with severely re-strictive physical disabilities have equal, non-discriminatory access to the franchise.

### 1.     Enjoining the Mail-In and In-Person Ballot Return Assis-tance Prohibitions is necessary to avoid irreparable harm.

The Mail-In and In-Person Ballot Return Assistance Prohibitions have taken away Plaintiffs' fundamental right to vote. Such disenfranchisement constitutes ir-reparable injury as a matter of law. *See Common Cause Ind. v. Lawson,* 327 F. Supp. 3d 1139, 1155 (S.D. Ind. 2018) ("As has been held by numerous other courts, the Court determines that a violation of the right to vote is presumptively an irreparable harm."), *aff'd*, 937 F.3d 944 (7th Cir. 2019); *Ezell v. City of Chicago,* 651 F.3d 684, 699 (7th Cir. 2011) ("[F]or some kinds of constitutional violations, irreparable harm is presumed.") (citing Charles Alan Wright et al, Federal Practice & Procedure § 2948.1 (2d ed. 1995) for the proposition that "[w]hen an alleged deprivation of a constitu-tional right is involved, most courts hold that no further showing of irreparable injury is necessary"); *League of Women Voters of N.C.*, 769 F.3d at 247 ("Courts routinely deem restrictions on fundamental voting rights irreparable injury.") (collecting

cases); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote ... constitutes irreparable injury."); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (explaining that the loss of constitutional "freedoms … unquestionably constitutes irreparable injury").

The Seventh Circuit has recognized that once a constitutional violation has been demonstrated, no further showing of irreparable injury is necessary. *See Ezell*, 651 F.3d at 699; *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm."). "[T]he violation of a fundamental constitutional right constitutes irreparable harm, even if temporary." *Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1123 (W.D. Wis. 2001). The effect of the Mail-In and In-Person Ballot Return Assistance Prohibitions is permanent and irreversible: Plaintiffs and other individuals with disabilities will lose their right to vote if they remain in place, and their right to vote in the upcoming November 2022 general elections can never be restored.

### 2. Traditional legal remedies will not adequately protect Plaintiffs' rights.

There is no adequate remedy at law for Wisconsin voters with disabilities who rely on a person of their choice to mail or return their absentee ballots to the clerk. If Plaintiffs are denied injunctive relief and the ability to have help mailing or returning their absentee ballots in the November 2022 general election, they will have lost that right forever. Even if the Mail-In and In-Person Ballot Return Assistance Prohibitions are permanently enjoined following the November 2022 election, Plaintiffs' votes in that election would be irreversibly compromised. Courts consistently find

that infringement on the right to vote cannot be remedied after the fact. Once an election "comes and goes, there can be no do-over and no redress." *League of Women Voters of N.C.*, 769 F.3d at 247; *see also Common Cause Ind.*, 327 F. Supp. 3d at 1153-54 (finding "no adequate remedy at law" when an individual's right to vote is violated, because "an individual cannot vote after an election has passed").

Likewise, monetary damages cannot compensate for Plaintiffs' irreparable harm—the right to vote is priceless. *See Common Cause Ind.*, 327 F. Supp. 3d at 1154; *Democratic Nat'l Comm. v. Bostelmann*, 451 F. Supp. 3d 952, 969 (W.D. Wis. 2020) ("[I]nfringement on a citizens' constitutional right to vote cannot be redressed by money damages, and therefore traditional legal remedies [are] inadequate[.]" (citing *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)); *People First of Ala.*, 491 F. Supp. 3d at 1180 ("Because no monetary sum could compensate for this injury [abridgment of the right to vote], legal remedies are inadequate.").

### 3. The balance of hardships weighs in favor of an injunction.

The balance of the equities favors Plaintiffs. An injunction will prevent disenfranchisement and discrimination by returning to the pre-July 2022 status quo which had existed for over half a century. Meanwhile, there is no additional burden on the state of Wisconsin, either monetarily or administratively, to delay implementing the Mail-In and In-Person Ballot Return Assistance Prohibitions, if they are later deemed lawful. Since the Wisconsin Supreme Court ruled in *Sommerfeld* in 1955, Wisconsin has allowed voters with disabilities to use ballot-return assistance (either by mail or in-person) for their absentee ballots. *See Sommerfeld*, 69 N.W.2d at 238. Returning

44

to the status quo ante "will not impose any new or additional harm[s] or burdens on the Defendants concerning their efforts to … ensure fair elections." *Ind. State Conf. NAACP v. Lawson*, 326 F. Supp. 3d 646, 664 (S.D. Ind. 2018), *aff'd sub nom. Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019).[26] Even if there were an administrative burden (and there is not) any such mild inconvenience would be outweighed by the vindication of constitutional rights. *See Taylor v. Louisiana.*, 419 U.S. 522, 535 (1975) (holding "administrative convenience" cannot justify practices that impinge upon fundamental rights).[27]

### 4.    An injunction is in the public interest.

Finally, granting Plaintiffs' motion is in the public interest. The right to vote is enshrined in the Constitution. Injunctions that enforce the Constitution are in the public interest, and Defendants' interests are—at best—secondary. *See Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004); *see also O'Brien v. Town of Caledonia*, 748 F.2d 403, 408 (7th Cir. 1984) ("[T]he public has a strong interest in the vindication of an individual's constitutional rights."); *Christian Legal Soc'y*, 453

---

26      Indeed, it is likely that enjoining the Mail-In and In-Person Ballot Return Assistance Prohibitions will *lessen* the administrative burdens on the state. If the Mail-In and In-Person Ballot Return Assistance Prohibitions are allowed to stand, they will no doubt (as they already have) create confusion throughout the state, necessitating the retraining of election officials, and will lead to inconsistent application by local election clerks. *Cf. supra* ¶ 41 n.17 (leaving to "municipal clerks" the "responsibility for considering applicable law").

27      Plus, there is no legitimate concern over election integrity in Wisconsin that outweighs Plaintiffs' right to vote. *See supra* ¶¶ 18-19 & Section C.2.b; *cf. Common Cause Ind.*, 327 F. Supp. 3d at 1155 (finding that "[d]epriving eligible citizens of the right to vote is a very significant harm" that outweighed state officials' alleged concerns about potential hindering of efforts "to maintain accurate voter registration rolls and to ensure fair elections" because there were other ways to address such concerns.) The balance of equities weighs in favor of declaring that the Mail-In and In-Person Ballot Return Assistance Prohibitions may not remainin in place, because they change the status quo in a manner that restricts the right to vote for a subset of duly qualified voters.

F.3d at 859 ("[I]njunctions protecting First Amendment freedoms are always in the public interest."); *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019)"([I]t is always in the public interest to protect constitutional rights." (citation omitted)).

Furthermore, the right to vote is "preservative of all rights." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). The public therefore has a "strong interest in the fundamental political right to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). That public interest is "best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011); *see also Am. Council of Blind of Ind. v. Ind. Election Comm'n,* 2022 WL 702257, at *10 (S.D. Ind. Mar. 9, 2022) ("[T]he Court finds that the public interest would be served by prohibiting discrimination in voting."). In sum, "[t]he public interest … favors permitting as many qualified voters to vote as possible." *Obama for Am.*, 697 F.3d at 437.[28]

Finally, it is squarely in the public interest that disabled people enjoy the same rights as all other Americans. "In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities." *Enyart v. Nat'l Conf. of Bar Exam'r, Inc.,* 630 F.3d 1153, 1167

---

[28]    Moreover, courts routinely find that preventing a violation of the Supremacy Clause serves the public interest. *See e.g., Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law, especially when there are no adequate remedies available." (internal citation omitted)); *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("Frustration of federal statutes and prerogatives are not in the public interest."); *Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905, 925 (S.D. Ind. 2011) (explaining that "the interest of preserving the Supremacy Clause is paramount." (internal citation omitted)); *Ass'n of Am. Publishers, Inc. v. Frosh*, 2022 WL 484926, at *13 (D. Md. Feb. 16, 2022) ("The State and the public have no legitimate interest in the operation of a state law that is likely preempted by federal law.").

(9th Cir. 2011); *see also Ramsay v. Nat'l Bd. of Med. Exam'r*, 968 F.3d 251, 263 (3d Cir. 2020) (finding "public interest in ADA compliance"), *cert. denied*, 141 S. Ct. 1517 (2021); *Taliaferro* 489 F. Supp. 3d at 439 ("[T]he public interest does not lie with enforcement of those state procedures which violate the laws which Congress has passed to prevent discrimination based upon disability"); *Bonnette v. D.C. Ct. of Appeals*, 796 F. Supp. 2d 164, 188 (D.D.C. 2011) (finding public interest "in ensuring that the antidiscrimination aims of the ADA are satisfied."). Enjoining the Mail-In and In-Person Ballot Return Assistance Prohibitions would further the public interest by allowing as many qualified Wisconsinites as possible to vote in accordance with the Constitution and federal law.

## III.   Enjoining The Mail-In And In-Person Ballot Return Assistance Prohibitions Do Not Cause A *Purcell* Problem

The Wisconsin general election is over three months away, and the rule set forth in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) should not preclude Plaintiffs' requested relief. Under *Purcell*, federal courts should exercise restraint in altering state election law on the "eve of an election." *One Wis. Inst. v. Thomsen*, 490 F. Supp. 3d 1338, 1343-44 (W.D. Wis. 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020)). *Purcell* applies only where the change in election rule would "fundamentally alter[] the nature of the election," by (i) leading to voter confusion; or (ii) making it more difficult for election officials to prepare for the election. *See Democratic Nat'l Comm. v. Bostelmann*, 447 F. Supp. 3d 757, 770 (W.D. Wis. 2020). Neither is true here. And even if the Court determines that *Purcell* could

apply, Plaintiffs will suffer irreparable harm—their complete disenfranchisement—so *Purcell* does not bar this Court from issuing the injunction Plaintiffs seek.

### A.    Plaintiffs' Requested Relief Does Not Create a *Purcell* Problem.

As Justice Kavanaugh recently explained, *Purcell*'s application depends on "how easily the State could make the change without undue collateral effects." *Merrill v. Milligan*, 142 S. Ct. 879, 881 n.1 (2022) (Kavanaugh, J., concurring).

Here, returning to the *status quo ante* creates neither confusion among voters nor a burden on Defendants to administer the upcoming elections. Indeed, a declaration by this Court that qualified voters with disabilities, such as Plaintiffs, are entitled to ballot-return assistance for the November 2022 general election, could not confuse voters, as it was the rule that existed in Wisconsin for 65 years, and was the law applied to Wisconsin elections as recently as five months ago. By issuing Plaintiffs' requested relief, "the court isn't altering any election rule; rather the court's order [would be] directed at ensuring that eligible voters know what the rules are and can exercise their established rights." *Thomsen*, 490 F. Supp. 3d at 1344 (injunction did not implicate *Purcell* where it required WEC to provide "prompt receipt of voting credentials and informing the public about" how to obtain qualified ID). Like this Court found in *Thomsen*, granting the injunction Plaintiffs seek would "minimize confusion, not increase it," *id.*, by restoring "the status quo from the last statewide election," in 2020. *Common Cause Ind. v. Lawson*, 2020 WL 8167493, at *4-5 (S.D. Ind. Oct. 9, 2020) (finding no judicially created confusion in enjoining recently passed laws that limited voters' opportunities to challenge a "variety of disenfranchising conditions").

48

Nor would enjoining the Mail-In and In-Person Ballot Return Assistance Pro-
hibitions create any burden on Defendants. Plaintiffs' proposed injunction does not
ask Defendants to affirmatively provide them with assistance; it doesn't ask Defend-
ants to retrain election officials on how to accept ballots; it doesn't ask them to do
anything. In fact, Plaintiffs' injunction does not "impose" any change on election pro-
cedure by "compelling a state to depart from its rules"—it merely reinstates rights
that existed for decades and allows the "state to implement its own statutes" as they
had previously (and continuously) been interpreted. *Frank v. Walker*, 769 F.3d 494,
496 (7th Cir. 2014).

Additionally, Plaintiffs' requested relief does not affect anything that "was al-
ready underway." *Lawson*, 2020 WL 8167493, at *5. No voters have received their
ballots for the November 2022 general election. If the Court issues the injunction,
anyone who will receive their absentee ballot but cannot vote it without assistance
will have ample time to make necessary arrangements. Thus, enjoining the Mail-In
and In-Person Ballot Return Assistance Prohibitions *now* and declaring that quali-
fied voters with disabilities may use ballot-return assistance in the November 2022
general election, will allow Defendants to clarify how voters with disabilities can ex-
ercise their rights with several months remaining before the open of the general elec-
tion in November. The November general election is well outside the reach of *Purcell*.

## B.    Even if *Purcell* Applies, The Injunction Should Issue.

Even close to an election (and it is not close), *Purcell* is not an ultimate bar to
relief where Plaintiffs would "suffer irreparable harm absent the injunction," the re-
lief sought is clear, the changes are feasible, and there was no undue delay in bringing

the complaint to court. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Here, Plaintiffs' position on the merits is "entirely clearcut." *Id.* Without an injunction, Plaintiffs face disenfranchisement. That is irreparable harm. Moreover, "[t]he changes in question are at least feasible before the election without significant cost, confusion, or hardship," because the changes requested had been the law of Wisconsin for decades. *Id.* They do not require Defendants to change election procedure and do not require Defendants to expend costs.

Nor have Plaintiffs "unduly delayed bringing the complaint to court," *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J. concurring). Plaintiffs initiated this action on July 22—just 14 days after *Teigen* was issued and 7 days after the Mail-In Ballot Return Assistance Prohibition was pronounced, and Plaintiffs moved for a preliminary injunction promptly within a week and with 3 months before the general election. The Court must act *now* before the disenfranchisement of disabled Wisconsin voters—like Plaintiffs—becomes a *fait accompli*.

## CONCLUSION

For the foregoing reasons this Court should issue an injunction barring implementation of the Mail-In and In-Person Ballot Return Assistance Prohibitions and declare that, subject only to the limitation found in 52 U.S.C. § 10508, qualified voters with disabilities such as Plaintiffs may have a person of their choice return their absentee ballots, either by mail or in-person to the clerk, for the November 2022 Wisconsin general election.

Dated: July 27, 2022.              Respectfully submitted

                                   /s/ Scott B. Thompson

Robert J. Gunther Jr. (N.Y. 1967652)*
Christopher R. Noyes (Mass. 654324)
Omar Khan (N.Y. 4528162)
Julia Pilcer Lichtenstein (N.Y.
5337035)
Sara E. Hershman (N.Y. 5453840)
Jared V. Grubow (N.Y. 5771845)
Wilmer Cutler Pickering
   Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Robert.Gunther@wilmerhale.com
Christopher.Noyes@wilmerhale.com
Omar.Khan@wilmerhale.com
Julia.Lichtenstein@wilmerhale.com
Sara.Hershman@wilmerhale.com
Jared.Grubow@wilmerhale.com

Justin R. Metz (Mass. 705658)
Wilmer Cutler Pickering
   Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Justin.Metz@wilmerhale.com

* W.D. Wisconsin Admission Pending

Scott B. Thompson (Wis. 1098161)
Elizabeth M. Pierson (Wis. 1115866)
Law Forward Inc.
222 West Washington Avenue, Suite
250
Madison, WI 53703-0326
414.241.3827
sthompson@lawforward.org
epierson@lawforward.org

Jeffrey A. Mandell (Wis. 1100406)
Douglas M. Poland (Wis. 1055189)
Stafford Rosenbaum LLP
222 West Washington Avenue, Suite
900
Post Office Box 1784
Madison, Wisconsin 53701-1784
608.256.0226
jmandell@staffordlaw.com
dpoland@staffordlaw.com