IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TIMOTHY CAREY,<br>MARTHA CHAMBERS,<br>SCOTT LUBER, MICHAEL REECE, | HON. JAMES PETERSON |
| | Civil Action No. 3:22-cv-00402 |
| *Plaintiffs*, | |
| v. | |
| WISCONSIN ELECTIONS COMMISSION,<br>MEAGAN WOLFE, in her official<br>capacity as Administrator of WEC, | |
| *Defendants*. | |

# STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to address issues arising under Section 208 of the Voting Rights Act, 52 U.S.C. § 10508 ("Section 208") and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 ("ADA" or "Title II"). As the Court considers the parties' motion for preliminary injunction briefing, the United States respectfully submits this Statement to explain the legal framework of the ADA and Section 208 as applied to Wisconsin's absentee voting program. Voters with disabilities are entitled to an equal opportunity to participate in absentee voting programs and must be provided reasonable modifications when necessary to avoid discrimination. The rights conferred by Section 208 of the Voting Rights Act and Title II of the ADA are rights squarely guaranteed, regardless of whether state laws or provisions otherwise limit such assistance.

## INTEREST OF THE UNITED STATES

28 U.S.C. § 517 states that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." Congress vested the Department of Justice ("Department") with authority to enforce the Voting Rights Act on behalf of the United States. 52 U.S.C. §§ 10101(c), 10307(a), 10308(d). In addition, as the agency charged by Congress to enforce and implement Title II of the ADA, the Department has an interest in supporting the proper and uniform application of the ADA, and in furthering Congress's intent to create "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities" and to reserve a "central role" for the Federal Government in enforcing the standards established in the ADA. 42 U.S.C. § 12101(b)(2), (3). The Department therefore has a substantial interest in ensuring proper interpretation of Section

208 and Title II. This Statement of Interest seeks to clarify the applicability of Section 208 and Title II to absentee ballot return assistance and Section 208 and Title II's interplay with state laws regarding absentee ballot return and reasonable accommodation requests.

## FACTUAL AND PROCEDURAL BACKGROUND

Under Wisconsin law, absentee voting is available to all registered voters. *See* Wis. Stat. §§ 6.20, 6.85(1). Absentee ballots may be returned by mail or in person to the municipal clerk. Wis. Stat. § 6.87(4)(b)1. Voters with physical disabilities that limit dexterity or mobility may require assistance to return an absentee ballot by mail or in person to the municipal clerk. Without ballot return assistance, many voters with disabilities are unable to vote absentee. *See* Compl. ¶ 4; Defs.' Mem. Opp. Prelim. Inj. ("Defs.' Mem.") at 12, ECF No. 26.

On July 8, 2022, the Wisconsin Supreme Court construed Wis. Stat. § 6.87(4)(b)1 to prohibit ballot return assistance for absentee ballots delivered in person to the municipal clerk. *See Teigen v. Wis. Elections Comm'n*, 976 N.W.2d 519, 543–45 (Wis. 2022). The *Teigen* Court expressly declined to address whether Wisconsin law permits ballot return assistance for absentee ballots returned through the mail. *Id.*[1]

Plaintiffs in this case are individuals with physical disabilities who require ballot return assistance in order to vote absentee. Compl. ¶¶ 1, 4. In their complaint filed on July 22, 2022, Plaintiffs alleged that Wisconsin law violates Section 208 by barring the assistance they need to return their absentee ballots to be counted. *Id.* ¶¶ 116, 118. Plaintiffs also alleged that the ADA

---

[1] The parties dispute whether Defendants have issued conflicting public statements regarding the impact of *Teigen* on mail ballot return. *See* Pls.' Mem. Supp. Prelim. Inj. at 14–15, ECF No. 17; Defs.' Mem. at 9-10. Defendants, however, do not dispute that certain municipalities have already informed voters that no assistance is allowed for mail return, without any exception for voters with disabilities. Defs.' Resp. to Pls.' Proposed Statement of Record Facts, ¶¶ 32–33, ECF No. 28.

requires Wisconsin to make reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability. *Id.* ¶¶ 130–31. On July 27, 2022, Plaintiffs moved for a preliminary injunction. *See* Pls.' Mot. Prelim. Inj., ECF No. 16. Defendants filed their opposition on August 12, 2022, arguing that, although they agree that Plaintiffs are entitled to assistance under federal law, they are not the proper defendants and no case or controversy exists; in the alternative, Defendants argue that the existence of a state reasonable accommodation statute obviates the need for any relief here. *See* Defs.' Mem. at 2.

## STATUTORY BACKGROUND

### I. Section 208 of the Voting Rights Act

Section 208 of the Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. The Act defines the terms "vote" and "voting" broadly to encompass "all action necessary to make a vote effective," including "casting a ballot[] and having such ballot counted properly." *Id.* § 10310(c)(1). Congress passed Section 208 to reinforce the nationwide ban on literacy tests by "assur[ing] meaningful voting assistance" and in turn "greater participation in our electoral process." S. Rep. No. 97-417, at 62-63 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177, 240; *see also* 52 U.S.C. § 10501(b)(1).

### II. Title II of the Americans with Disabilities Act

Congress enacted the ADA as a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). An exercise of the "sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce," *id.*, the ADA broadly covers and prohibits

discrimination in the full range of activities conducted by public entities, 42 U.S.C. §§ 12131–12134.  Congress found that discrimination persists in "critical areas" such as "*voting*, and access to public services."  42 U.S.C. §§ 12101(a)(3), (5) (emphasis added).

Title II, which prohibits discrimination on the basis of disability by public entities, mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  Title II defines "public entity" to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. §§ 12131(1)(A), (B).

Title II's implementing regulation, set out in Title 28, Part 35 of the Code of Federal Regulations, reflects and implements the statute's broad nondiscrimination mandate.  *See* 42 U.S.C. § 12134.  The regulatory provisions state that the statute's coverage extends to "all services, programs, and activities provided or made available by public entities," which includes voting programs.  28 C.F.R. § 35.102(a); *see* 28 C.F.R. pt. 35, app. B at 690 (stating, in the preamble to the Title II regulations, that this language applies to "[a]ll governmental activities of public entities," i.e., "anything a public entity does"); *see also Pa. Dep't. of Corrs. v. Yeskey,* 524 U.S. 210 (1998) (holding that "[t]he text of the ADA provides no basis for distinguishing" the programs, services, and activities of a public entity in one context from those provided in other contexts); *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1107 (11th Cir. 2011) ("As a public program, disabled citizens must be able to participate in the County's voting program"); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) ("Voting is a quintessential public activity.").

Title II requires that public entities "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7)(i). A public entity need not make modifications that it can demonstrate would "fundamentally alter" the nature of the program. *Id*.

## ARGUMENT

**I. Section 208 of the Voting Rights Act Guarantees Assistance to Voters with Disabilities Who Need Assistance Delivering Their Absentee Ballot.**

Section 208 of the Voting Rights Act affords voters who are entitled to vote absentee the right to receive the assistance they need due to disability, including delivering their completed ballot to be counted. Section 208 provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Incorporating the definition of "vote" under the Voting Rights Act, "assistance to vote" in Section 208 refers to any assistance required to complete "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to," taking any "action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly." *Id.* § 10310(c)(1). Because delivering one's completed absentee ballot is an "action necessary" for "having such ballot counted properly," 52 U.S.C. § 10310(c)(1), voters who require assistance in delivering their ballot due to disability must be allowed to obtain such assistance from an assistor of their choice under Section 208. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017) (holding that "[b]ased on the unambiguous language of the [Voting Rights Act]," the term "'to vote' . . . plainly contemplates more than the mechanical act of filling out the ballot sheet"); *see also La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-0844, 2022 WL 1651215, at *15 (W.D.

6

Tex. May 24, 2022) (explaining that under Section 208, voters who require assistance must be allowed to obtain "whatever assistance is necessary to ensure their vote is effective"); *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-cv-361, 2022 WL 2678884, at *6 (E.D.N.C. July 11, 2022) (finding that Section 208 applies to state laws regulating the delivery of completed absentee ballots). Hence, prohibiting all assistance for ballot return delivery even when a voter needs assistance due to disability violates Section 208.

Section 208's legislative history bolsters that conclusion. In enacting Section 208, Congress identified "the blind, the disabled, and those who either do not have a written language or who are unable to read" as "discrete groups of citizens [who prior to the passing of Section 208 were] unable to exercise their rights to vote without obtaining assistance in voting." S. Rep. 97-417, at 62, *reprinted in* 1982 U.S.C.C.A.N. at 240. To ensure these groups of voters have "the same opportunity to vote enjoyed by all citizens," Congress mandated that state election procedures may not "deny the assistance at some stages of the voting process during which assistance was needed." *Id.* at 62–63. Allowing voters with disabilities to obtain any necessary assistance in delivering their completed ballots—the last, essential step of ensuring that one's vote is counted, regardless of the method of delivery—therefore falls squarely within Section 208's intended reach.

That the affected voters here are voting absentee, rather than in person, makes no difference in this statutory analysis. Section 208 contains no carveout for any specific mode of voting, such as absentee voting. Indeed, "*any* voter who requires assistance" due to disability or inability to read, 52 U.S.C. § 10508 (emphasis added), must be allowed to obtain assistance to take actions that are "necessary to make a vote effective," *id.* § 10310(c)(1). Congress's use of "any" to modify "voter" conveys a deliberately vast scope covering every voter, including those

7

choosing to vote absentee. *See Swartz Ambulance Serv., Inc. v. Genesee Cnty.*, 666 F. Supp. 2d 721, 728 (E.D. Mich. 2009) ("Definitions of the word 'any' include 'without limit' and 'every.'") (citations omitted). Accordingly, all voters—whether they choose to vote absentee or not—who require assistance due to disability are entitled to Section 208's protection, and "a state cannot restrict this federally guaranteed right" by "defining terms [such as 'vote'] more restrictively than as federally defined." *OCA-Greater Houston*, 867 F.3d at 615 (holding that Section 208 applies to assistance outside the ballot box, based on the expansive definition of "vote" and "voting" in the Voting Rights Act); *see also Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2022 WL 715973, at *13 (M.D.N.C. Mar. 10, 2022) ("The court further finds that 'voting' includes the delivery of an absentee ballot to a county board of elections as an action 'necessary to make a vote effective'—an absentee ballot must be delivered in order to be counted."). Any distinction that state law may make between in-person voting and absentee voting, *see, e.g.*, Wis. Stat. § 6.84 ("[V]oting by absentee ballot is a privilege exercised wholly outside the traditional safeguards of the polling place"), therefore is irrelevant to the conclusion that Section 208's federally guaranteed right applies to absentee voters.

## II. The Availability of Reasonable Accommodations Under State Law Cannot Replace Voters' Federally Guaranteed Right Under Section 208 of the Voting Rights Act.

Defendants argue that Wisconsin's requirement for municipal clerks to consider reasonable accommodation requests from voters with disabilities neutralizes its restrictions on voter assistance, and that its election laws therefore do not conflict with Section 208. *See* Defs.' Mem. at 17-18. Defendants are incorrect. Section 208's affirmative right to assistance is distinct from and broader than Wisconsin's reasonable accommodation statute, which states that "[e]ach municipal clerk shall make *reasonable efforts to comply with* requests for voting accommodations made by individuals with disabilities *whenever feasible*." Wis. Stat. § 7.15(14)

8

(emphasis added). In other words, state law merely requires local election officials to consider granting reasonable accommodation requests from voters with disabilities, based on those local officials' subjective sense of reasonableness and feasibility. Relying on such a discretionary, permission-based scheme unlawfully narrows the scope of Section 208's right to assistance, which is an affirmative right to any necessary assistance that does not hinge on the vagaries of local election officials' discretion and judgment. *See* 52 U.S.C. § 10508 ("[A]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice"). The existence of a state law reasonable accommodation provision, subject to the idiosyncratic discretion of municipal clerks, would not negate a state statutory bar on necessary assistance for voters with disabilities. Nor can that state law substitute for, or replace, the affirmative right to voting assistance guaranteed by Section 208.

### III. Providing Ballot Return Assistance to Voters with Disabilities is a Reasonable Modification Under the ADA.

The antidiscrimination mandate of Title II of the ADA is implemented through its specific regulatory provisions. Under Title II, Defendants must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7)(i). Congress recognized that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004). Therefore, "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does." *Jones v. City of Monroe*, 341 F.3d 474, 487 (6th Cir. 2003).

A public entity need not make a proposed modification where it would fundamentally alter the nature of the public entity's program, service, or activity. 28 C.F.R. § 35.130(b)(7); *see*

*also Steimel v. Wernert*, 823 F.3d 902, 916 (7th Cir. 2016) ("It is the state's burden to prove that the proposed changes would fundamentally alter their programs." (citing *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 611 (7th Cir. 2004))).

As the Seventh Circuit explained in *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006), the obligation to provide modifications tracks the plain language of the regulation such that the modification must be "a *reasonable* one" and is required when "*necessary* to avoid discrimination *on the basis of* a disability." *Id.* (emphasis in original).

The Seventh Circuit has long recognized the reasonable modification mandate and required public entities to make modifications to their policies and practices to afford equal opportunity to individuals with disabilities pursuant to Title II. *Washington v. Ind. High Sch. Athletic Ass'n, Inc.,* 181 F.3d 840, 844 (7th Cir. 1999) (permitting waiver of a high school athletic association rule as a reasonable modification where the waiver presented no conflict to the underlying purpose of the rule); *see also Steimel v. Wernert*, 823 F.3d 902, 916–17 (7th Cir. 2016) (finding plaintiffs' requests to change their mix of services was reasonable because it would allow them to participate more fully in the community and the state provided no evidence that providing the requested services would significantly increase their costs or otherwise amount to a fundamental alteration); *see also Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506–07 (4th Cir. 2016)(holding state violated Title II by failing to provide the reasonable modification of an accessible absentee voting program where the state required voters with disabilities to use a paper absentee ballot rather than an online ballot marking tool since voters with disabilities could not mark the paper ballot without third-party assistance).

Defendants do not contest the reasonableness of ballot return assistance and admit that such assistance to voters with disabilities is permissible under federal law. *See* Defs.' Mem. at 9. Here, assistance is necessary to enable Plaintiffs to participate in the absentee voting program. And Defendants' assertion that their laws require ballot return assistance for voters with disabilities undercuts any suggestion that providing such assistance would fundamentally alter their absentee voting program. *Id.* at 17. Further, providing ballot return assistance to voters with disabilities could not be a fundamental alteration because it is required by another federal law—the Voting Rights Act. The provision of ballot return assistance is thus a reasonable modification necessary to avoid discrimination under Title II.[2]

### IV. Federal Laws Preempt Wisconsin Law Governing the Administration of Elections to the Extent It Interferes with Defendants' Ability to Comply with the Voting Rights Act and the ADA.

To the extent that Wisconsin's laws interfere with Defendants' ability to meet their federal civil rights obligations, Section 208 of the Voting Rights Act and Title II of the ADA supersede any conflicting provisions of state law. The Supremacy Clause of the U.S. Constitution makes clear that a state statute is preempted to the extent it conflicts with federal law. *See* U.S. CONST. art. VI, cl. 2. The Supreme Court has "held repeatedly that state laws

---

[2] Plaintiffs also bring a claim under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794. While this Statement of Interest focuses on the ADA, there is no significant difference in analysis of the rights and obligations created by Title II of the ADA and Section 504 of the Rehabilitation Act. *See* 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims]."); *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) (stating that courts are required to "construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act"); *see also Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999) (the elements of claims under the Title II and Section 504 are nearly identical, and precedent under one statute typically applies to the other); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 n.3 (9th Cir. 1995) ("The legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA.").

11

can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). State law conflicts with federal law either (1) when it is impossible to comply with both state and federal law or (2) "where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (internal citation omitted).

Defendants' contention that Wisconsin's laws require reasonable voting accommodations appears to overstate the requirements of state law. Defendants argue that when Wisconsin's elections statutes are read together they "expressly require reasonable accommodation of disabled voters," and thus do not conflict with any of the provisions of federal law on which Plaintiffs rely. Defs.' Mem. at 17. Defendants explain that Wis. Stat. § 6.87(4)(b)1, requiring electors to return their own ballot by mail, is to be read with Wis. Stat. § 7.15(14), which requires municipal clerks in Wisconsin to "make reasonable efforts to comply with requests for voting accommodations made by individuals with disabilities whenever feasible." *See* Defs.' Mem. at 17–18. But Wisconsin's municipalities are not *required* to provide accommodations to voters with disabilities under Wisconsin law when they determine that it is not feasible to do so. Wis. Stat. § 7.15(14).

Reliance on this discretionary scheme does not require accommodations to the same extent as Title II of the ADA, which, as described above, requires the state to make reasonable modifications for voters with disabilities including providing ballot return assistance for those who need it. Section 6.87(4)(b)1 does not provide an exception to the requirement that electors return their own absentee ballots, so a municipal clerk may well conclude, reading this provision together with Section 7.15(14), that providing ballot return assistance to voters with disabilities

is not feasible, regardless of whether it would fundamentally alter the absentee voting program. And, as Defendants concede, certain jurisdictions have categorically prohibited such assistance, underscoring that the requirement in Section 7.15(14) to make "reasonable efforts" to accommodate voters with disabilities is discretionary—particularly when read with Section 6.87(4)(b)1, which expressly prohibits ballot return assistance. *See* Defs.' Resp. to Pls.' Proposed Statement of Record Facts, ¶¶ 32–33, ECF No. 28. Wisconsin's election laws thus interfere with the State's ability to comply with Title II, frustrating the inclusion principles and broad reasonable modification mandate at the core of the ADA and harming individuals with disabilities trying to avail themselves of Defendants' absentee voting program. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (concluding that Hawaii's animal quarantine law, as applied to guide dogs, interfered with the state's compliance with Title II of the ADA).

## CONCLUSION

For the reasons set forth above, Section 208 of the Voting Rights Act guarantees voters with disabilities a right to receive ballot return assistance. Title II of the ADA requires that voters with disabilities receive equal opportunity to participate in absentee voting programs, and that they be provided reasonable modifications when necessary to avoid discrimination. These rights are guaranteed by Section 208 and Title II, regardless of whether state laws otherwise limit such assistance and notwithstanding the existence of a state law provision for reasonable accommodation requests.

DATE: August 18, 2022

                                                  Respectfully submitted,

                                                  */s/ Barbara L. Oswald*

| | |
|---|---|
| KRISTEN CLARKE<br>Assistant Attorney General | TIMOTHY M. O'SHEA<br>United States Attorney |
| REBECCA B. BOND<br>Acting Deputy Assistant Attorney General | LESLIE K. HERJE<br>BARBARA L. OSWALD<br>Assistant United States Attorneys |
| JENNIFER MATHIS<br>Deputy Assistant Attorney General | 222 West Washington Avenue, Suite 700<br>Madison, Wisconsin 53703<br>Telephone: (608) 264-5158<br>barbara.oswald@usdoj.gov |

T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
DANA PAIKOWSKY
JENNIFER J. YUN
Attorneys, Voting Section

ANNE S. RAISH
JENNIFER K. MCDANNELL
CHARLOTTE LANVERS
Attorneys, Disability Rights Section

Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 353-5225
dana.paikowsky@usdoj.gov