IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY CAREY, MARTHA CHAMBERS,
SCOTT LUBER, and MICHAEL REECE,

                              Plaintiffs,

          v.                                                OPINION and ORDER

WISCONSIN ELECTIONS COMMISSION,                             22-cv-402-jdp
and MEAGAN WOLFE, in her official capacity as
Administrator of WEC,

                              Defendants.

---

Plaintiffs are four Wisconsin citizens who wish to vote in the November 2022 election. In the past, plaintiffs have used absentee ballots to vote because they have disabilities—including paralysis, muscular dystrophy, and cerebral palsy—that make it extremely difficult for them to vote in person. And they consistently use the assistance of third parties to return their ballots. But in July 2022, the Wisconsin Supreme Court decided *Teigen v. Wisconsin Elections Commission*, 2022 WI 64, 976 N.W.2d 519, construing state law as prohibiting voters from obtaining assistance from a third party to return an absentee ballot to the municipal clerk. A few days later, defendant Meagan Wolfe, the administrator of defendant Wisconsin Elections Commission, stated during a news conference that "the voter is the one required to mail the [absentee] ballot."

Plaintiffs say that they cannot comply with the state law at issue, Wis. Stat. § 6.87(4)(b)1, because they are physically unable to hold a ballot and return it to the clerk and therefore need third-party assistance. So plaintiffs are faced with a dilemma. Do they violate the law by using assistance to vote absentee and risk having their vote thrown out or, worse,

being sanctioned for violating the law? Do they try to vote in person, risking their health and safety? Or do they give up their right to vote altogether?

Plaintiffs reject each of these options, so they filed this lawsuit, contending that § 6.87(4)(b)1 violates their rights under the Voting Rights Act (VRA), the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the First and Fourteenth Amendments of the U.S. Constitution. They seek a declaration of their rights under federal law, an order enjoining defendants from enforcing § 6.87(4)(b)1 against them, and an order directing defendants to instruct municipal clerks on their duty to accommodate disabled voters. Dkt. 16. The United States has filed a brief under 28 U.S.C. § 517, agreeing with plaintiffs that the VRA and the ADA give them the right to choose a person to assist them with returning their absentee ballot. Dkt. 29. Defendants oppose the motion, contending that they aren't appropriate defendants because they haven't taken any adverse actions against plaintiffs, and there is no evidence that they are likely to do so in the future.

The court will grant plaintiffs' motion. Defendants don't dispute that there is an appreciable risk that plaintiffs' vote will be thrown out if they violate § 6.87(4)(b)1. Instead, defendants say that it is municipal clerks who are going to make that call in the first instance, so plaintiffs should have sued them instead. But defendants are also responsible for enforcing election laws, and it is defendants, not clerks, who are charged with providing guidance on how to apply the law.

Defendants say that they agree with plaintiffs that they are entitled to assistance in returning their absentee ballot. But that is just a litigation position; it doesn't communicate to voters what their rights are or to clerks what their responsibilities are. The statements and memos from defendants since *Teigen* was issued are either inconsistent with their litigation

2

position or simply punt the question to more than 1,800 municipal clerks. This leaves disabled voters vulnerable and municipal clerks confused.

Voters shouldn't have to choose between exercising their federal rights and complying with state law. But that is the position that plaintiffs find themselves in, and that is in part because defendants have refused to provide needed clarification. If defendants cannot or will not give plaintiffs assurances that their right to vote will be protected, this court must do so. The Voting Rights Act is clear: disabled voters who need assistance in returning an absentee ballot are entitled to ask a person of their choosing for that assistance. The court will issue a declaration of plaintiffs' rights under the VRA and an injunction that ensures their rights will be upheld. Because the VRA provides plaintiffs with complete relief, it isn't necessary to consider plaintiffs' other claims.

Plaintiffs filed their motion as one for preliminary relief, but during the preliminary injunction hearing, the court asked the parties whether any further factual development was needed, and, if not, whether plaintiffs' motion could be converted into one for summary judgment. Neither side has identified any potential factual disputes that preclude entering permanent relief now. *See* Dkt. 37 and Dkt. 38. Defendants do object to the scope of plaintiffs' proposed injunction, but that's a legal question, not a factual one. The court has addressed defendants' concerns in the opinion and in the order granting declaratory and injunctive relief. But the parties haven't identified a reason for delaying judgment in this case, and the court cannot discern one, so the court will convert plaintiffs' motion for a preliminary injunction into a motion for summary judgment, grant relief, and close the case.

BACKGROUND

Plaintiffs are Wisconsin citizens who are registered to vote. They have consistently voted in past Wisconsin elections and intend to vote again in the November 2022 election, using an absentee ballot.

Timothy Carey lives in Appleton. He has muscular dystrophy, can't move any part of his body without assistance, and is always attached to a ventilator.

Martha Chambers lives in Milwaukee. She is paralyzed from the neck down, so she cannot move her arms or legs without assistance.

Scott Luber lives in Mequon. He has muscular dystrophy, and he cannot hold a ballot in his hand, place a ballot in a mailbox, or hand a ballot to a municipal clerk.

Michael Reece lives in Sun Prairie. He has cerebral palsy and is paralyzed from the chest down. He cannot hold a ballot in his hand, open the door to deliver it to a mail carrier, place it in a mailbox, or hand it directly to the municipal clerk.

In past elections, each plaintiff has relied on the assistance of a third party to return his or her absentee ballot.

Plaintiffs are challenging the validity of one sentence in Wis. Stat. § 6.87(4)(b)1 that describes the process to be used for returning an absentee ballot: "The envelope shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots." In 2020, the commission issued a memo that included the following interpretation of § 6.87(4)(b)1: "A family member or another person may . . . return the [absentee] ballot on behalf of a voter." Dkt. 31, ¶ 24.

Two voters filed a lawsuit challenging the commission's memo, and the Waukesha County Circuit Court concluded that § 6.87(4)(b)1 requires voters to mail or deliver absentee

4

ballots themselves; they may not give their ballot to a third party to do that for them. Dkt. 31, ¶ 26. The circuit court didn't consider the effect of its ruling on people with disabilities. *Id.*, ¶ 28. In response to the circuit court's ruling, the commission rescinded the memo at issue. *Id.*, ¶ 31.

The circuit court's ruling took effect for the April 2022 election. Plaintiffs provide examples of advice provided by municipal clerks in three counties during that election:

- In Brown County, a sticker was placed on the envelopes for absentee ballots stating that the ballot could "ONLY be mailed or returned by the voter, NO ONE else may return your ballot." *Id.*, ¶ 32 and Dkt. 22 (emphasis in original).

- In Madison, voters were told on the city's website that "no one but the absentee voter is able to return their completed ballot." Dkt. 31, ¶ 33.

- In Racine, voters were told that an absentee ballot "*can* be returned by someone who is not the voter." *Id.*, ¶ 34 (emphasis added).

On July 8, 2022, the Wisconsin Supreme Court affirmed the circuit court's decision. *See Teigen v. Wisconsin Elections Comm'n*, 2022 WI 64, 976 N.W.2d 519. The court began its discussion by observing that the challenged memo from the commission does "not address whether voters who mail an absentee ballot must personally place the ballot into a mailbox or if a voter's agent may do so. We therefore do not decide at this time whether the law permits a voter's agent to place an absentee ballot in the mail on the voter's behalf." *Id.*, ¶ 4. However, the court did not vacate the portion of the circuit court's order that prohibited third-party assistance for mailing an absentee ballot.

As for the issue about delivering absentee ballots, the supreme court concluded that the "voter must personally deliver" an absentee ballot to the clerk, *id.*, ¶ 4, reasoning that "the phrase 'in person' refers to a voter acting directly, not through an agent," *id.*, ¶ 75. The court rejected the commission's argument that the use of passive voice supported a view that voters

themselves aren't required to return the ballot. *Id.*, ¶ 79. The court also considered *Sommerfeld v. Board of Canvassers of City of St. Francis*, 269 Wis. 299, 300, 69 N.W.2d 235, 236 (1955), which held that "delivery of ballots by agent" is permitted when voting absentee. But the court concluded that *Sommerfeld* had been superseded by more recent statutes. *Teigen*, 2022 WI 64, at ¶¶ 80–83.

In a section of the lead opinion joined by Justices Ziegler and Roggensack only, Justice Rebecca Bradley briefly addressed arguments about federal preemption by the Voting Rights Act and the Americans with Disabilities Act. First, she wrote that the commission and Disability Rights Wisconsin (an intervening party) had forfeited the preemption argument by failing to develop it. *Id.*, ¶ 86. She also included the following sentence: "Whatever accommodations federal law requires, Wis. Stat. § 6.87(5) seems to permit them." *Id.*

The commission held a meeting on July 12, four days after *Teigen* was decided, but the members couldn't agree on what guidance to give municipal clerks.[1] Two days later, the commission held a press conference. When asked during a question-and-answer session with reporters what she would tell voters to reduce confusion over who can physically place ballots in mailboxes, administrator Wolfe said that voters should ask their local clerks for guidance but added that "right now, the voter is the one required to mail the ballot."[2] But then she said that "it's not appropriate for me to opine [about] anything in the court's ruling." *Id.*

---

[1] Corrinne Hess, *Wisconsin Voters Must Mail Their Own Ballots, Election Administrator Says*, Milwaukee J. Sentinel (July 15, 2022, 3:39 PM), https://www.jsonline.com/story/news/politics/elections/2022/07/14/wisconsin-voters-must-place-their-own-ballots-mail/10060842002.

[2] CBS News, *Administrator: Wisconsin voters must mail their own absentee ballots*, https://www.cbsnews.com/minnesota/news/administrator-wisconsin-voters-must-mail-their-own-absentee-ballots/.

The same day, the commission issued a memo stating that "Administrator Wolfe's comments should not be interpreted as a policy statement or statutory interpretation, but rather a direct reference to state statutes on this topic."[3] The memo directs the reader to *Teigen* and Wis. Stat. § 6.87(4)(b)1, and it tells municipal clerks that they "are responsible for considering applicable law in administering the absentee by mail process in their communities." *Id.*

The commission held another meeting on August 3, 2022, after which it issued another memo. The memo expressly declines to give an opinion on "whether or not a disabled Wisconsin voter may request assistance with the return or mailing of their absentee ballot." Dkt. 27-1. Instead, the memo directs municipal clerks to "a noncomprehensive list of legal considerations that clerks may wish to discuss with counsel," including the VRA, the ADA, the Constitution, and Wis. Stat. § 7.15(14).

ANALYSIS

The court must decide three issues. First, are the interests of plaintiffs and defendants sufficiently adverse to give plaintiffs standing to sue? Second, to what extent does federal law preempt Wis. Stat. § 6.87(4)(b)1? Third, what is the appropriate scope of relief?

**A. Standing**

The primary dispute is over whether there is a dispute at all. Defendants say that there isn't one because they agree with plaintiffs that the law entitles them to assistance with mailing and delivering an absentee ballot. They point out that their litigation position in *Teigen* was to

---

[3] WIS. ELECTIONS COMM'N, Clarification on Absentee Ballot Return Comments (July 25, 2022), https://elections.wi.gov/news/clarification-absentee-ballot-return-comments.

interpret § 6.87(4)(b)1 as allowing third-party assistance for anyone, not just disabled voters. But even if their interpretation of state law is wrong, defendants say that they agree with plaintiffs that the VRA requires the assistance they are seeking.

Defendants' argument implicates Article III of the U.S. Constitution, which limits the federal judicial power to "cases" and "controversies." *Amling v. Harrow Indus. LLC,* 943 F.3d 373, 377 (7th Cir. 2019). This limitation is generally framed as a question of standing. In a case like this one involving a request for injunctive relief, the plaintiffs have standing if they are under imminent threat of suffering a concrete and particularized injury that is fairly traceable to the challenged action of the defendants and is likely to be redressed by a favorable judicial decision. *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009). The court concludes that plaintiffs have satisfied this standard.

Plaintiffs risk an imminent injury regardless of what they do. If they choose to comply with § 6.87(4)(b)1, they will have to forfeit their right to vote or attempt to vote in person with great difficulty and perhaps even at risk to their health and safety. (Plaintiffs Carey and Reece say that their disabilities make voting in person impossible.) But if plaintiffs violate § 6.87(4)(b)1 by obtaining assistance to vote absentee, their vote could be rejected, and they could be sanctioned for violating the law.

"[A] person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of prosecution is not immediate." *Hays v. City of Urbana, Ill.,* 104 F.3d 102, 103 (7th Cir. 1997). And plaintiffs don't have to show that the threat is certain: it is enough to show that there is a "credible threat of enforcement" by the defendant. *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 161 (2014).

Plaintiffs have met that standard. The Wisconsin Supreme Court has authoritatively interpreted § 6.87(4)(b)1 as prohibiting voters from giving their ballot to a third party, and the court identified no exceptions for disabled voters. Justice Rebecca Bradley suggested that Wis. Stat. § 6.87(5) would permit accommodations that disabled voters need to comply with § 6.87(4)(b)1, *see Teigen*, 2022 WI 64, ¶ 86, but that's simply incorrect. Section 6.87(5) is about filling out a ballot, not returning it to the clerk.[4]

It is true that a majority of the supreme court declined to decide whether § 6.87(4)(b)1 "permits a voter's agent to place an absentee ballot in the mail on the voter's behalf." *Id.*, ¶ 4. But the court did not vacate the portion of the circuit court's decision interpreting § 6.87(4)(b)1 as requiring absentee ballots to be mailed by the voter personally, which leaves the legal status of the circuit court's order unclear. And Justice Roggensack supported the circuit court's conclusion in her concurrence, writing that the "clear and unambiguous text" of § 6.87(4)(b)1 "does not permit an agent to mail an absentee ballot for a voter." *Id.*, ¶ 109.

Wolfe reinforced the view of the circuit court and Justice Roggensack when she said at a press conference shortly after *Teigen* was decided that "the voter is the one required to mail the ballot." *See Bos. Correll v. Herring*, 212 F. Supp. 3d 584, 601–02 (E.D. Va. 2016) ("[A] particularized, objectively chilling threat of enforcement may arise from informal

---

[4] Section § 6.87(5) states:

> If the absent elector declares that he or she is unable to read, has difficulty in reading, writing or understanding English or due to disability is unable to mark his or her ballot, the elector may select any individual, except the elector's employer or an agent of that employer or an officer or agent of a labor organization which represents the elector, to assist in marking the ballot, and the assistant shall then sign his or her name to a certification on the back of the ballot, as provided under s. 5.55.

correspondence issued by a state official."). Defendants say that Wolfe's statement should be interpreted to mean that assistance *is* allowed for mailing ballots, but their argument borders on doublespeak:

> Wolfe's statement at the news conference was consistent with the position the Commission took in *Teigen*, where the Commission argued that, under the common and approved meaning of the word "mail," a ballot is "mailed by the elector," within the meaning of Wis. Stat. § 6.87(4)(b)1., if the elector gives it to an agent and directs the agent to place it in the mail, and the agent does so.

Dkt. 26, at 9 n.3. The court understands defendants to be saying that Wolfe's reference to "the voter" in her statement should be interpreted as including the voter's agent. But no reasonable person would interpret Wolfe's statement in the way that defendants suggest. This view is supported by headlines in news reports interpreting Wolfe's statement to mean that "voters must mail their own ballots."[5] Despite defendants' strained interpretation of Wolfe's statement, even defendants do not identify a plausible way to distinguish the rule on mailing a ballot from the rule on delivering a ballot.

---

[5] *See, e.g.*, Corrinne Hess, *Wisconsin Voters Must Mail Their Own Ballots, Election Administrator Says*, Milwaukee J. Sentinel (July 15, 2022, 3:39 PM) https://www.jsonline.com/story/news/politics/elections/2022/07/14/wisconsin-voters-must-place-their-own-ballots-mail/10060842002; CBS News, *Administrator: Wisconsin voters must mail their own absentee ballots*, https://www.cbsnews.com/minnesota/news/ administrator-wisconsin-voters-must-mail-their-own-absentee-ballots/; see U.S. News & World Report, *Administrator: Voters Must Mail Their Own Absentee Ballots*, https://www.usnews.com/news/best-states/wisconsin/articles/2022-07-14/administrator-voters-must-mail-their-own-absentee-ballots; PBS Wisconsin, *Wisconsin Elections Commission Administrator: Voters must mail their own absentee ballots*, https://pbswisconsin.org/news-item/wisconsin-elections-commission-administrator-voters-must-mail-their-own-absentee-ballots; TMJ4/WTMJ-TV Milwaukee, *Administrator: Voters must mail their own absentee ballots*, https://www.tmj4.com/news/political/elections-local/administrator-voters-must-mail-their-own-absentee-ballots.

Taken together, the evidence cited above shows that § 6.87(4)(b)1 is reasonably interpreted as prohibiting voters—including disabled voters—from relying on a third party to return their absentee ballot. *Cf. Schirmer v. Nagode*, 621 F.3d 581, 587 (7th Cir. 2010) ("[A] plaintiff lacks standing to bring a pre-enforcement challenge if the plaintiff's conduct was clearly outside the statute's scope. (internal quotation marks omitted)).

Defendants don't dispute that plaintiffs have a reasonable fear of violating the law. Instead, defendants' primary contention is that there is no credible threat that *defendants* will enforce the law against plaintiffs, for two reasons: (1) it is municipal clerks, not the commission, who will decide whether to accept or reject plaintiffs' absentee ballots; (2) defendants' actions have demonstrated that they will not take any adverse action against plaintiffs for using a third-party to assist them with returning an absentee ballot. The court rejects both reasons.

As for the commission's role in enforcing election laws, the parties agree that municipal clerks make the first call on whether to accept or reject a ballot. But the commission plays an important role in enforcing election laws too. For example, it may review the legality of decisions to accept or reject a ballot under Wis. Stat. § 5.06, and it may investigate violations of election laws for potential prosecution under Wis. Stat. § 5.05(2m).

The court isn't persuaded that the commission is an improper party simply because its involvement in the enforcement process comes later. "Injury need not be certain. Any pre-enforcement suit entails some element of chance." *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 650 (7th Cir. 2010). For example, plaintiffs asserting a preenforcement challenge to a criminal statute may sue the state attorney general to enjoin enforcement, even though police officers are making the initial arrest decisions. *See, e.g., American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *see also Poe v. Snyder*, 834 F. Supp. 2d 721, 730–31

11

(W.D. Mich. 2011) (governor and attorney general were proper defendants in challenge to criminal law because they both have "some responsibility for the enforcement of Michigan's laws"). The commission is in a similar position to a prosecutor, something it has implicitly acknowledged in previous lawsuits by failing to object on justiciability grounds, even when the lawsuit also involved state laws would be enforced in the first instance by clerks. *See, e.g., Common Cause v. Thomsen*, 574 F. Supp. 3d 634 (W.D. Wis. 2021) (challenge to student ID requirements). If the court were to accept defendants' argument, it would mean that any plaintiffs seeking statewide relief on a challenge to voting requirements would have to sue more than 1,800 municipal clerks. That isn't feasible, and it isn't what the law requires.

This leaves the question whether defendants' actions show that they will not enforce § 6.87(4)(b)1 against plaintiffs. In support of an argument that they won't, defendants point to three things:

1) The commission's July 14 memo stating that "Administrator Wolfe's comments should not be interpreted as a policy statement or statutory interpretation, but rather a direct reference to state statutes on this topic."

2) The commission's August 3 memo directing clerks to "consider" various laws requiring accommodations for disabled people in the context of voting.

3) The brief that defendants have filed in this case.

The court is persuaded that none of these documents remove a credible threat of enforcement to defeat plaintiffs' standing to sue defendants.

The July 14 memo provides some support for defendants because it directs the reader *not* to interpret Wolfe's statement as reflecting the official position of the commission. But the problem is that the July 14 memo doesn't directly contradict Wolfe's statement or provide *any* interpretation of the law. If anything, the memo creates more confusion by saying that Wolfe's statement was "a direct reference to state statutes on this topic," without explaining what that

12

means. In short, the memo does nothing to disavow the view that the law prohibits disabled voters from receiving assistance in mailing or delivering a ballot. *See New Hampshire Lottery Comm'n v. Rosen,* 986 F.3d 38, 53–54 (1st Cir. 2021) (new memo stating that previous memo "did not address" the issue being litigated did remove credible threat of enforcement because new memo didn't disavow threat of enforcement implicit in original memo).

The August 3 memo doesn't provide any more clarity. It refers clerks to various disability laws but provides no guidance on how to apply those laws. In fact, the memo cautions clerks that it "is not a statement on the applicability or viability of . . . questions and challenges" regarding how to apply § 6.87(4)(b)1. The message to voters and clerks is unstated but clearly implied: "We can't tell you whether disabled voters are entitled to assistance in returning their ballots. You're on your own." That refusal to provide guidance can't be relied on to show the absence of a dispute.

This leaves defendants' brief in this case, in which they say that they agree with plaintiffs that plaintiffs should be allowed to designate an agent to return their ballot under the VRA. But numerous courts have held that a litigation position doesn't eliminate a threat of enforcement because a litigation position isn't binding, and the relevant parties could change their mind on a whim. [6]

The reasoning of these courts is persuasive, and it's consistent with Seventh Circuit law stating that the court doesn't have to accept a state's litigation position on its potential

---

[6] *See, e.g., EQT Prod. Comp. v. Wender*, 870 F.3d 322, 331 (4th Cir. 2017); *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010); *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383–84 (2d Cir. 2000); *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710–11 (4th Cir. 1999) *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 35 (1st Cir. 1999); *Myers v. Fulbright*, No. CV 17-59-M-DWM-JCL, 2018 WL 1094298, at *7 (D. Mont. Jan. 30, 2018) *Bos. Correll*, 212 F. Supp. 3d at 601–02; *Poe*, 834 F. Supp. 2d at 729–30.

13

enforcement of a statute because "the Attorney General . . . may change his mind about the meaning of the statute." *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990). It's also consistent with Seventh Circuit law that there is a credible threat of enforcement when the defendants don't expressly disavow enforcement of a law that clearly applies to the plaintiffs. *Alvarez*, 679 F.3d at 592–93; *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687–88 (7th Cir. 1998); *Hays*, 104 F.3d at 103–04. That's similar to what's happening here: defendants have refused to issue any official guidance that would preclude enforcement of § 6.87(4)(b)1 against plaintiffs. Even in their brief, defendants don't commit to enforcing or interpreting state and federal law in a way that would allow plaintiffs third-party assistance. If defendants wished to resolve their dispute with plaintiffs, they could have issued official guidance explaining that disabled voters are entitled to assistance in returning their absentee ballots. But defendants have refused to do that, so a controversy between plaintiffs and defendants still exists.

Even if the court were to assume that *defendants* won't enforce the law against plaintiffs, there would still be a reasonable possibility that a municipal clerk could reject a ballot under those circumstances. In fact, plaintiffs have cited evidence that clerks in Brown and Dane counties have informed voters that they may not receive third-party assistance in returning their absentee ballots. Dkt. 22 and Dkt. 31, ¶¶ 32–33. A potential rejection of a ballot by a clerk is fairly traceable to defendants because defendants have refused to provide clerks the guidance that defendants are required under state law to provide. *See, e.g.*, Wis. Stat. § 5.05(5t) (requiring the commission to provide "updated guidance or formal advisory opinions" within two months of a binding court decision); Wis. Stat. § 6.869 (requiring the commission "to prescribe uniform instructions for municipalities to provide to absentee electors").

*Democratic National Committee v. Bostelmann*, 488 F. Supp. 3d 776 (W.D. Wis. 2020), is instructive. In that case, the plaintiffs sued the commissioners to enjoin enforcement of various election laws during the COVID pandemic, including limitations on absentee voting.[7] The Wisconsin Legislature—an intervenor-defendant—argued on behalf of the commissioners that the plaintiffs' claims challenged independent actions of third parties who were not named as defendants, including local election officials, so the plaintiffs' lacked standing to sue the commissioners. The court rejected that argument, concluding that defendants' injuries could be traced to the commissioners because it was the commission's responsibility under state law to administer Wisconsin's elections and provide guidance to local governments. *Id.* at 796 (citing § 5.05(1) and § 5.05(5t)). *See also Arkansas United v. Thurston,* 517 F. Supp. 3d 777, 794 (W.D. Ark. 2021) (injury caused by state-law limitation on receiving voting assistance was "fairly traceable to State Defendants because State Defendants train the county officials and monitor their compliance with state and federal election laws"). The connection between plaintiffs' injuries and defendants' conduct is even tighter in this case because the defendants are partially responsible for the confusion through their statements and unhelpful memos.

The court also concludes that plaintiffs' injuries can be redressed by ordering relief against defendants. Specifically, the court can: (1) order defendants to issue guidance to municipal clerks about plaintiffs' rights under federal law; and (2) enjoin defendants from enforcing the prohibition on § 6.87(4)(b)1 on ballot-return assistance. These injunctions would help to prevent plaintiffs' ballots from being rejected in the first instance by municipal clerks

---

[7] *Democratic National Committee* was lawsuit against the individual commissioners rather than commission itself. But the commission does not object to being sued on sovereign immunity grounds, so that issue is waived. *See Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389, (1998).

and from later being the subject of a complaint under § 5.06 or an investigation under § 5.05(2m).

In short, the court concludes that plaintiffs have standing to sue defendants. Plaintiffs have shown that they are under threat of injuries that are fairly traceable to defendants and that can be redressed by this court.

## B. Preemption

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land. . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. The effect of the Supremacy Clause is that state laws that are contrary to or interfere with federal law are preempted and therefore unenforceable. *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991).

Plaintiffs contend that § 6.87(4)(b)1 is preempted by the Voting Rights Act, the Americans with Disabilities Act, the Rehabilitation Act, and the Constitution. There are multiple types of preemption, but plaintiffs rely solely on conflict preemption, which applies when: (1) it would be "impossible" to uphold the state-law claim without violating federal law; or (2) recognizing the state-law claim would create an "obstacle" to satisfying the purposes and objectives of Congress. *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020).

The court concludes that the VRA preempts § 6.87(4)(b)1 because it is impossible to comply with both laws. As discussed above, Wisconsin state courts have construed § 6.87(4)(b)1 as prohibiting voters from obtaining assistance in returning their absentee ballot. For the reasons explained below, that prohibition contradicts the VRA.

Under the VRA, "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice,

16

other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. The word "vote" is defined to include "all action necessary to make a vote effective." 52 U.S.C. § 10310(c)(1).

The application of the VRA to the facts of this case is straightforward. Returning a ballot is one of the "action[s] necessary to make a vote effective," and plaintiffs "require[] assistance . . . by reason of . . . disability" in returning their ballot because all of them suffer from disabilities that prevent them from putting a ballot in a mailbox or handing a ballot to a clerk. As a result, the VRA allows plaintiffs to receive assistance from "a person of [their] choice," so long as that person is not their "employer or agent of that employer or officer or agent of [their] union."

Section 10508 is broadly worded, and the text of the statute doesn't limit the permitted assistance to voting in person. In fact, other courts have held that the statute applies to absentee voting. For example, in *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, the court rejected the defendants' argument that a state complies with § 10508 so long as there is "at least one means by which [the voter] can cast his ballot with help from a person of his choice," and the court held that "voting using an absentee ballot constitutes 'voting' under the VRA."  476 F. Supp. 3d 158, 234 (M.D.N.C. 2020). As a result, the court concluded that a state law prohibiting a person from assisting more than six people with an absentee ballot was preempted by the VRA because it restricted the voter's choice of assistant more sharply than the VRA permits. *Id.* at 235–36; *see also Disability Rts. N. Carolina v. N. Carolina State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 1410712, at *3–4 (E.D.N.C. May 4, 2022) (applying VRA to restrictions on delivering an absentee ballot because "[m]ailing an absentee ballot is an action required by law prerequisite to voting, casting a ballot, and having such ballot counted").

The court concludes that the VRA requires that plaintiffs be allowed to choose a person to assist them with mailing or delivering their absentee ballot. Wisconsin state courts have construed § 6.87(4)(b)1 as prohibiting voters, including disabled voters like plaintiffs, from receiving such assistance, so that portion of § 6.87(4)(b)1 is preempted by the VRA.

Defendants say that § 6.87(4)(b)1 can be saved by construing it together with Wis. Stat. § 7.15(14), which states that "[e]ach municipal clerk shall make reasonable efforts to comply with requests for voting accommodations made by individuals with disabilities whenever feasible." There is no case law construing § 7.15(14), and defense counsel couldn't identify during the preliminary injunction hearing any guidance that the commission has issued on its meaning. It isn't necessary for this court to provide a definitive construction of § 7.15(14) in this case, but the court isn't persuaded that § 6.87(4)(b)1 can avoid federal preemption by construing it together with § 7.15(14), for two reasons.

First, the supreme court did not suggest in *Teigen* that the reach of § 6.87(4)(b)1 is limited by § 7.15(14), so any limiting construction provided by this court would be inconsistent with the supreme court's interpretation of the statute. And defendants provide no authority for the view that an accommodation can be "reasonable" or "feasible" under § 7.15(14) if the requested accommodation would violate another state law. *Cf. Doe v. Hous. Auth. of Portland*, No. 13-CV-1974-SI, 2015 WL 758991, at *6 (D. Or. Feb. 23, 2015) (collecting cases in which courts have held that accommodations are unreasonable if they require the defendant to violate federal law). Defendants' interpretation of § 7.15(14) would give municipal clerks discretion to decide when to follow other state laws based on their view of what a reasonable accommodation is, but defendants identify no other context in which Wisconsin public officials

18

are given the authority to determine for themselves when to follow or disregard a state law based on the application of another state law.

Second, there are significant differences between the scope of § 7.15(14) and the VRA. The VRA gives disabled voters the affirmative right to choose a person to help them vote, regardless of anything the municipal clerk allows. Section 7.15(14) doesn't do that. It allows the disabled voter to *ask* the clerk for an accommodation, which the clerk can deny if the accommodation isn't reasonable or if isn't "feasible" for the clerk to provide the accommodation. That's a narrower right than the one granted under the VRA, and it wouldn't guarantee that a disabled voter would be allowed to obtain assistance.

The court concludes that the VRA preempts § 6.87(4)(b)1 to the extent it prohibits third-party ballot-return assistance to disabled voters who require such assistance. This conclusion makes it unnecessary to consider plaintiffs' claims under the other federal statutes and the Constitution. Plaintiffs say that "sufficient relief must address Plaintiffs' ADA, Rehabilitation Act, and constitutional claims," Dkt. 30, at 25, but they provide no facts or law to support that view. The VRA gives plaintiffs the full relief they are seeking in this case, which is the right to obtain third-party assistance in mailing or delivering an absentee ballot to the municipal clerk. That resolves the controversy, and it moots plaintiffs' other claims. *See Koger v. Bryan*, 523 F.3d 789, 801 (7th Cir. 2008) (declining to decide constitutional claim because case could be resolved on statutory grounds); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (concluding that court didn't need to consider ADA claim because Rehabilitation Act provided full relief, and a plaintiff "can have but one recovery"). Plaintiffs (or, more precisely, plaintiffs' counsel) might prefer to obtain favorable declarations on the

scope of other laws that could help them in future litigation. But parties aren't entitled to advisory opinions. *See Socha v. Pollard*, 621 F.3d 667, 670 (7th Cir. 2010).

## C. Relief

Plaintiffs seek both declaratory and injunctive relief. Courts have discretion in awarding declaratory relief, *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019), and it is appropriate to exercise that discretion here. The purpose of declaratory relief is to remove the plaintiff's dilemma "between abandoning his rights or risking prosecution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). That's exactly the purpose that a declaration will serve in this case: to confirm plaintiffs' federal rights to receive assistance in returning their absentee ballots so they can vote without fear that their ballots will be rejected or that they will be sanctioned for violating § 6.87(4)(b)1.

A court may grant permanent injunctive relief on a successful claim when the plaintiffs show that they will be irreparably harmed without the injunction, that the benefits of granting the injunction outweigh the injury to the defendant, and that the public interest will not be harmed by the relief requested. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 867–68 (7th Cir. 2018). In this case, plaintiffs ask the court to: (1) enjoin defendants from enforcing the portion of § 6.87(4)(b)1 that prohibits plaintiffs from receiving assistance in returning their absentee ballot; and (2) direct defendants to issue instructions to municipal clerks that is consistent with the rights declared by the court.

The court concludes that plaintiffs' requested relief satisfies each of the requirements for obtaining injunctive relief. Without the requested injunctions, plaintiffs risk losing their right to vote, which qualifies as an irreparable harm, *see One Wisconsin Inst., Inc. v. Thomsen*, 490 F. Supp. 3d 1338, 1342 (W.D. Wis. 2020); defendants have not identified any harm that they

will suffer from a properly drawn injunction, and the court cannot discern any; and the public interest is served by helping to ensure that eligible citizens are able to exercise their right to vote. As requested by defendants, *see* Dkt. 38, the court will add language to the injunction specifying what enforcement actions they are prohibited from taking.

The court acknowledges the so-called *Purcell* principle, under which "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). The Supreme Court has said little about the origin of the principle, but Justice Kavanaugh has stated that it represents "a sensible refinement" of the factors governing injunctive relief in the elections context. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring).

Defendants aren't relying on *Purcell*, which suggests that they have forfeited that issue. *See Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1042 (7th Cir. 2020) (assuming that defendants could waive *Purcell* issues). But even if the court is required to consider the *Purcell* principle on its own, the court concludes that it doesn't preclude relief in this case, for three reasons.

First, plaintiffs could not have filed this lawsuit much sooner than they did. *Teigen* was decided on July 8, 2022, and plaintiffs filed this lawsuit on July 22, 2022, only two weeks later. So this is not a situation in which plaintiffs were sleeping on their rights. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring) (one factor favoring grant of relief despite *Purcell* is that "the plaintiff has not unduly delayed bringing the complaint to court"); *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 642 (7th Cir. 2020) ("A last-minute event may require a last-minute reaction.").

21

Second, the primary concerns underlying the *Purcell* principle—confusion and disruption—don't apply here. *See Merrill*, 142 S. Ct. at 880–81 (Kavanaugh, J., concurring); *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring); *Republican Nat'l Comm.*, 140 S. Ct. at 1207; *Tully v. Okeson*, 977 F.3d 608, 618 (7th Cir. 2020). As for confusion, that's exactly what prompted this lawsuit. This court's order won't create confusion but rather will alleviate it by clarifying election officials' obligation under federal law. As for disruption, the relief being ordered is narrowly targeted and requires defendants to do nothing other than what they are already required to do under state law. Absentee ballots will not be sent out to voters until September 22, so there is still time to make sure that all voters receive consistent information and that clerks across the state will treat absentee ballots from disabled voters the same.

Third, even if the court's order imposes a small burden on defendants, that burden is justified by the clear violation of plaintiffs' federal rights. One of the factors relevant to ordering injunctive relief close to an election is whether "the underlying merits are entirely clearcut in favor of the plaintiff." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). In this case, the VRA applies with obvious clarity: plaintiffs are entitled to use assistance when returning their absentee ballot.

For all of these reasons, the court concludes that plaintiffs are entitled to both declaratory and injunctive relief, as set forth in a separate order.

ORDER

IT IS ORDERED that:

1. The motion for a preliminary injunction filed by plaintiffs Timothy Carey, Martha Chambers, Scott Luber, and Michael Reece, Dkt. 16, is converted into a motion for

22

summary judgment, and the motion is GRANTED on plaintiffs' claims under the Voting Rights Act, 52 U.S.C. § 10508. Plaintiffs' claims under the Americans with Disabilities Act, the Rehabilitation Act, and the First and Fourteenth Amendments are dismissed as moot.

2. In accordance with *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 922–23 (7th Cir. 2019), the court's order on declaratory and injunctive relief will be set forth in a separate document.

3. The clerk of court is directed to enter judgment and close this case.

Entered August 30, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge